[L.A. No. 32267. Jan. 12, 1989.]

SHELDON APPEL COMPANY, Cross-complainant and Respondent,
v.
ALBERT & OLIKER, Cross-defendant and Appellant.

COUNSEL

Hufstedler, Miller, Carlson & Beardsley, Shirley M. Hufstedler, Thomas & Elliott, Stephen L. Thomas and Peter O. Israel for Cross-defendant and Appellant.

Stephens, Berg, Lasater & Schulman, Stephens, Berg, Lasater, Schulman & Rogers, R. Wicks Stephens II and J. Lane Tilson for Cross-complainant and Respondent.

OPINION

ARGUELLES, J.—Albert & Oliker (A&O), a law firm, appeals from a judgment entered against it in a malicious prosecution action.[1] The law firm contends that the trial court erred in permitting the case to go to the jury, asserting that the court should have concluded, on the basis of the uncontroverted facts, that Sheldon Appel Company (Sheldon Appel) had failed to establish one of the essential elements of a malicious prosecution action— namely, that the prior action, on which the malicious prosecution claim was based, had been brought "without probable cause." The Court of Appeal rejected the law firm's claim, and we granted review to consider a number of issues relating to the proper determination of the probable cause element in a malicious prosecution action, including the question whether a plaintiff may establish an absence of probable cause by proving that its former

---

[1] After this litigation began, the law firm's name was changed to Carl A. Albert, Inc., but in the interest of consistency we shall continue to refer to the firm as A&O.

adversary's attorney failed to perform adequate legal research before filing the prior action.

As we shall explain, we conclude that when, as in this case, there is no dispute as to the facts upon which an attorney acted in filing the prior action, the question whether there was probable cause to institute the prior action is purely a legal question, to be determined by the trial court on the basis of whether, as an objective matter, the prior action was legally tenable or not. If the court determines that the prior action was not objectively tenable—and thus concludes that the action was brought without probable cause—evidence of the extent of an attorney's legal research may be relevant to the further question of whether the prior action was instituted with malice, but if the court finds that the prior action was in fact tenable, probable cause is established—and the malicious prosecution action fails—without regard to the adequacy or inadequacy of the attorney's legal research efforts.

The trial court in this case did not resolve the probable cause issue in this manner, but improperly left the probable cause determination to the jury for resolution under an erroneous standard. We need not return the case to the trial court, however, for we are in as good a position as that court to make the required legal determination, and we conclude, in light of the underlying facts and relevant legal precedents, that the prior action in question here was objectively tenable and thus was not brought without probable cause. Accordingly, we shall reverse the decision of the Court of Appeal with directions to order the entry of judgment in favor of A&O.

I

In August 1978, three of A&O's clients—M.J. Choppin, J.P. Kinzer, Jr., and Donald Miller (collectively, CKM)—sold a 42-unit apartment building to Sheldon Appel. During the negotiations which preceded the signing of the escrow agreement, Sheldon Appel represented that it would do a "first class" job of converting the building into condominiums and selling the units, and CKM ultimately agreed to sell the building for $2,750,000 cash plus "47% of the excess, if any, of gross sales receipts to [Sheldon Appel] of the condominium units over 3,750,000 dollars." The escrow agreement contained a clause providing that all terms of the sale agreement which were to be performed by Sheldon Appel but which were incapable of performance before the close of escrow would survive the close of escrow and would be binding on Sheldon Appel and its "successors or assigns," but neither the sale agreement nor the escrow agreement contained any provision expressly declaring that the property was to constitute security for Sheldon Appel's obligations.

Shortly after the close of escrow on February 5, 1979, CKM learned that Sheldon Appel was offering to sell the entire building in bulk for $4 million. The loan prospectus for this offer contained detailed estimates of expected resale prices for individual condominium units, totaling well over $4.9 million. The sale of the building in bulk would have produced a quick profit for Sheldon Appel, sparing it the effort and expense associated with the sale of individual units. At the same time, however, CKM feared that such a sale would deprive it of its anticipated share of the profits attributable to the sale of the apartments as individual units rather than as a single piece of property.

After learning of Sheldon Appel's bulk sale offer, CKM consulted its attorneys, defendant A&O. On February 23, 1979, A&O filed a complaint on behalf of CKM against Sheldon Appel, seeking a declaration of CKM's rights under the sales contract and the imposition of an equitable lien on the property in question; at the same time, A&O recorded a notice of lis pendens on the property on behalf of CKM.

A little more than a month thereafter, on March 30, 1979, Sheldon Appel filed a motion to expunge the notice of lis pendens, contending that CKM's action did not affect "title to or right of possession of" the real property in question and thus that the lis pendens was not valid (see Code Civ. Proc., § 409.1); in addition to expungement, the motion sought an award of attorneys' fees as a sanction for CKM's alleged misuse of the lis pendens procedure (see Code Civ. Proc., § 409.3). Three weeks later, on April 19, 1979, the trial court granted the motion and expunged the lis pendens; the court declined, however, to impose attorneys' fees on CKM. CKM sought a writ of mandate to vacate the expungement order, but the Court of Appeal denied the writ petition and this court denied a petition for hearing. Eventually, all of the causes of action in CKM's original lawsuit were terminated in Sheldon Appel's favor.[2]

During the period between the recording of the lis pendens and its expungement, Sheldon Appel abandoned its plan to make a bulk sale of the apartment building and began to sell individual condominium units, incurring extra interest costs because of the cloud on the title resulting from the lis pendens. On December 4, 1979, after Sheldon Appel had sold enough condominiums to generate receipts in excess of $3,750,000 but had not paid

---

[2] A&O contended in the Court of Appeal that Sheldon Appel had failed to prove a "favorable termination" of the prior action—a required element of a malicious prosecution action—but the Court of Appeal resolved that issue in favor of Sheldon Appel. A&O did not seek review of that question and our specification of issues did not encompass the matter. Accordingly, at this stage we treat the favorable-termination issue as settled in Sheldon Appel's favor.

any of the excess to CKM, A&O filed a new action on CKM's behalf seeking damages for breach of contract.

On January 3, 1980, Sheldon Appel filed an answer to the breach of contract action and, at the same time, filed a cross-complaint against both CKM and A&O seeking damages for malicious prosecution. In support of its malicious prosecution claim, Sheldon Appel alleged that CKM and A&O had knowingly asserted an untenable lien claim and recorded an impermissible lis pendens to force it to sell individual units.

The trial court severed the malicious prosecution cross-complaint from the breach of contract complaint, and the contract action went to trial first. On April 24, 1984, CKM obtained a judgment of over $720,000 against Sheldon Appel in the breach of contract action.

Sheldon Appel's cross-complaint for malicious prosecution then proceeded to a separate trial. CKM moved *in limine* for a ruling by the trial court on the question whether the challenged lien claim and lis pendens had been filed and recorded without probable cause, asserting that the uncontradicted facts established that the prior action was instituted with probable cause. The trial court denied the motion and permitted the malicious prosecution action to go to trial.

At trial, the court, over objection, permitted an attorney called by Sheldon Appel to testify as an expert witness on the question of the legal tenability of the prior action. The court also admitted evidence with respect to the adequacy of the legal research that had been performed by A&O prior to the filing of the initial complaint and the recording of the lis pendens. John Zemanek, an attorney employed by A&O who at that point had been a member of the bar for less than a year, had prepared and filed the complaint and had recorded the notice of lis pendens on behalf of CKM. Zemanek initially reported spending slightly over four hours performing all of these tasks, but later testified that he had spent more time than he had reported. Sheldon Appel asserted that Zemanek had spent unreasonably little time researching the legal basis for the lien claim.

In submitting the probable cause issue to the jury, the trial court instructed the jury that "[t]o constitute probable cause for the prosecution of a civil proceeding against [Sheldon Appel] . . . the evidence must establish that: [A&O], after a reasonable investigation and industrious search of legal authority, had an honest belief that their clients' claims were tenable, and that [A&O] prosecuted claims which a reasonable lawyer would regard as tenable, or did not unreasonably neglect to investigate the facts and law in making their determination to proceed with the prior action." As so in-

structed, the jury found in favor of Sheldon Appel on the malicious prosecution action, and awarded it $82,000 in compensatory damages and $1 million in punitive damages.[3]

A&O appealed from the judgment, and a divided Court of Appeal upheld the finding of liability and the compensatory damage award.[4] The majority opinion in the Court of Appeal found that the governing authorities did not support CKM's assertion of a lien in this case, that "[a]n unreasonably deficient research of the applicable law can indeed lead to a finding of no probable cause," that the trial court had properly admitted expert testimony on the probable cause issue, and finally that the trial court had properly left the probable cause issue to the jury under the instruction it had given. The dissenting opinion in the Court of Appeal concluded that while CKM's lien claim had proven unsuccessful, reasonable minds could differ as to the validity of the claim and thus A&O had, "as a matter of law, . . . met the objective standard of probable cause." In the dissent's view, the imposition of malicious prosecution liability on these facts would "cast a chilling pall over attorneys' vigilance in the protection of litigants."

We granted review to consider, and to attempt to clarify, a number of issues that have led to disparate rulings in recent Court of Appeal decisions with respect to the application of the probable cause element in malicious prosecution actions.

II

The common law tort of malicious prosecution originated as a remedy for an individual who had been subjected to a maliciously instituted criminal charge, but in California, as in most common law jurisdictions, the tort was long ago extended to afford a remedy for the malicious prosecution of a civil action. (See *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123, 126-127 [4 P. 1106]; *Grant* v. *Moore* (1866) 29 Cal. 644.) ■ Under the governing authorities, in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate "that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations]." (*Bertero* v. *National General Corp.* (1974) 13

---

[3] The jury found both A&O and its client, CKM, liable for malicious prosecution, but the trial court entered judgment notwithstanding the verdict in favor of CKM, and Sheldon Appel has not pursued an appeal from the judgment in CKM's favor.

[4] The Court of Appeal found the amount of punitive damages excessive and ordered a remand for a new trial limited solely to that issue. Sheldon Appel did not seek review from that holding.

Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; Rest.2d Torts, §§ 653-681B.)

Before taking up the specific questions presented by this case—which relate to the proper application of only the probable cause element of the tort—we think it may be helpful to touch on several policy concerns that have recently been raised with respect to the appropriate application of the malicious prosecution tort generally.

■ Although the malicious prosecution tort has ancient roots, courts have long recognized that the tort has the potential to impose an undue "chilling effect" on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court, and, as a consequence, the tort has traditionally been regarded as a disfavored cause of action. (See, e.g., *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 847 [92 Cal.Rptr. 179, 479 P.2d 379]; cf. *Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 159-160 [114 P.2d 335, 135 A.L.R. 775].)[5] In a number of other states, the disfavored status of the tort is reflected in a requirement that a plaintiff demonstrate some "special injury" beyond that ordinarily incurred in defending a lawsuit in order to prevail in a malicious prosecution action. (See *O'Toole* v. *Franklin* (1977) 279 Ore. 513 [569 P.2d 561, 564, fn. 3] [listing 17 states adhering to special-injury rule]; *Friedman* v. *Dozorc* (1981) 412 Mich. 1 [312 N.W.2d 585, 596] [applying special-injury rule].) Even in jurisdictions, like California, which do not impose a special-injury requirement, the elements of the tort have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim.

In recent years, however, the large volume of litigation filed in American courts has become a matter of increasing concern, and in some quarters it has been suggested that a reassessment of the traditional "disfavored" status of the malicious prosecution tort, and a relaxation of some of the traditional elements of the tort, may be in order.

---

[5] The disfavored status of the tort originated in the context of malicious prosecution actions brought by individuals who had been charged with a criminal offense, and stemmed from the important public policy of encouraging the reporting of suspected crimes by ordinary citizens. (See *Bertero* v. *National General Corp., supra,* 13 Cal.3d 43, 53.) Although that particular concern is not implicated when the focus of the malicious prosecution action is a prior civil suit, it is similarly important "that an individual be free to protect personal rights by resort to the courts without the threat of a countersuit for damages in the event the suit is unsuccessful" (Harper et. al., The Law of Torts (2d ed. 1986) § 4.2, p. 408), and courts have generally been sensitive to the need to carefully limit tort liability in the context of malicious prosecution of a civil proceeding, as well as when the focus of the action is a prior criminal charge. (See, e.g., *Babb, supra,* 3 Cal.3d 841, 847-848; *Norton* v. *Hines* (1975) 49 Cal.App.3d 917, 922 [123 Cal.Rptr. 237].)

A number of legal commentators have examined the merits of permitting more liberal use of malicious prosecution actions against litigants and their attorneys as a means of combating groundless litigation. Most of the academic commentators have concluded that expansion of the malicious prosecution tort is not a promising remedy for the problem. (See, e.g., Mallen & Levit, Legal Malpractice (2d ed. 1981) § 48, p. 101 ["[s]ound public policy considerations dictate against lessening the requirements of the tort and against creating new remedies for one whose injury is attributable to having been named as a party in a lawsuit"]; Birnbaum, *Physicians Counterattack: Liability of Lawyers for Instituting Unjustified Medical Malpractice Actions* (1977) 45 Fordham L.Rev. 1003, 1033 ["Any significant expansion of the tort of malicious prosecution would lead to interminable and vexatious litigation that should be avoided"]; Note, *Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis* (1979) 88 Yale L.J. 1218, 1234-1237 [proposing that malicious prosecution tort be replaced with compulsory counterclaim in underlying action]. But see, e.g., Note, *A Lawyer's Duty to Reject Groundless Litigation* (1980) 26 Wayne L.Rev. 1561, 1566-1570 [proposing that attorney liability be expanded by imposing negligence liability to clients' adversaries].)

The courts of several other states have recently addressed this same question and, in thoughtful opinions, have rejected attempts to broaden the application of the tort, refusing to extend the scope of malicious prosecution liability. (See, e.g., *Wong* v. *Tabor* (Ind.App. 1981) 422 N.E.2d 1279, 1285-1290 [declining to expand definition of lack of probable cause]; *Friedman* v. *Dozorc, supra,* 312 N.W.2d 585, 595-608 [declining to expand definition of lack of probable cause and declining to abandon special-injury rule].)

After reviewing the competing policy considerations, we agree with those decisions and commentaries which have concluded that the most promising remedy for excessive litigation does not lie in an expansion of malicious prosecution liability. As the Supreme Court of Michigan has recently noted, "In seeking a remedy for the excessive litigiousness of our society, we would do well to cast off the limitations of a perspective which ascribes curative power only to lawsuits." (*Friedman* v. *Dozorc, supra,* 312 N.W.2d at p. 600.) While the filing of frivolous lawsuits is certainly improper and cannot in any way be condoned, in our view the better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself, rather than through an expansion of the opportunities for initiating one or more additional rounds of malicious prosecution litigation after the first action has been concluded. In recent years, the Legislature has taken several steps in this direction, enacting legislation to facilitate the early weeding out

of patently meritless claims and to permit the imposition of sanctions in the initial lawsuit—against both litigants and attorneys—for frivolous or delaying conduct. (See, e.g., Code Civ. Proc., §§ 437c, 1038, 128.5, 409.3.) Because these avenues appear to provide the most promising remedies for the general problem of frivolous litigation, we do not believe it advisable to abandon or relax the traditional limitations on malicious prosecution recovery. This general perspective informs our analysis of the more specific questions presented by this case, to which we now turn.

## III

A&O's challenge to the trial court's treatment of the probable cause element in this case implicates four interrelated issues: (1) the respective roles of the court and the jury in the determination of this element; (2) whether probable cause is to be tested by an objective or a subjective standard, or some combination of the two; (3) whether the adequacy of a defendant attorney's investigation or legal research is relevant to the probable cause determination; and (4) whether expert testimony is admissible on the issue. As we shall see, past California malicious prosecution decisions have not been consistent in their discussion and treatment of these issues. We take up each of these issues in turn, and then consider whether, on the facts of this case, the trial court should have granted judgment in A&O's favor.

### A. *Role of Court and Jury in the Probable Cause Determination*

A&O's initial and broadest contention is that the trial court committed a fundamental error in effectively leaving the determination of the probable cause issue to the jury rather than resolving that question itself. We conclude that the objection is well taken.

As noted above, in a malicious prosecution action, the plaintiff, in addition to establishing that the prior action was terminated in its favor, must prove both (1) that the prior action was brought without probable cause and (2) that the action was initiated with malice. (See, e.g., *Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 50.)

The "malice" element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action, and past cases establish that the defendant's motivation is a question of fact to be determined by the jury. (See, e.g., *Runo* v. *Williams* (1912) 162 Cal. 444, 450 [122 P. 1082]; see generally Rest.2d Torts, § 681B, subd. (2)(b).)

By contrast, the existence or absence of probable cause has traditionally been viewed as a question of law to be determined by the court, rather than a question of fact for the jury. As this court stated emphatically in the leading case of *Ball* v. *Rawles* (1892) 93 Cal. 222, 227 [28 P. 937]: "Malice is always a question of fact for the jury, but whether the defendant had or had not probable cause for instituting the prosecution is always a matter of law to be determined by the court. If the facts upon which the defendant acted are undisputed, the court, according as it shall be of the opinion that they constituted probable cause or not, either will order a nonsuit (or direct a verdict for the defendant), or it will submit the other issues to the jury; but whether admitted or disputed, the question is still one of law to be determined by the court from the facts established in the case." (See generally Rest.2d Torts, §§ 674, com. h, 681B, subd. (1)(c); Annot. (1963) 87 A.L.R.2d 183, 186-188; 1 Harper et al., The Law of Torts, *supra,* §§ 4.5, 4.8, pp. 441-442, 476; Prosser & Keeton on Torts (5th ed. 1984) § 119, p. 882.)

■ An important policy consideration underlies the common law rule allocating to the court the task of determining whether the prior action was brought with probable cause. The question whether, on a given set of facts, there was probable cause to institute an action requires a sensitive evaluation of legal principles and precedents, a task generally beyond the ken of lay jurors, and courts have recognized that there is a significant danger that jurors may not sufficiently appreciate the distinction between a merely unsuccessful and a legally untenable claim. To avoid improperly deterring individuals from resorting to the courts for the resolution of disputes, the common law affords litigants the assurance that tort liability will not be imposed for filing a lawsuit unless *a court* subsequently determines that the institution of the action was without probable cause. (See, e.g., *Ball* v. *Rawles, supra,* 93 Cal. 222, 228-229; *Grant* v. *Moore, supra,* 29 Cal. 644, 654; *Williams* v. *Coombs* (1986) 179 Cal.App.3d 626, 635-637 [224 Cal.Rptr. 865]; *Hernon* v. *Revere Copper & Brass, Inc.* (8th Cir. 1974) 494 F.2d 705, 707; Annot., *supra,* 87 A.L.R.2d 183, 186-187, 192.) If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, whether or not there is evidence that the prior suit was maliciously motivated. (See, e.g., *Grant* v. *Moore, supra,* 29 Cal. 644, 656-657; *Potter* v. *Seale* (1857) 8 Cal. 217, 220; *Crescent Live Stock Co.* v. *Butchers' Union* (1887) 120 U.S. 141, 148-149 [30 L.Ed. 614, 617-618, 7 S.Ct. 472]. See generally Prosser & Keeton on Torts, *supra,* § 119, p. 876.)

■ In the present case the trial court refused to resolve the probable cause question when the matter was submitted to it by a motion *in limine,* and instead submitted the probable cause issue to the jury under a rather

elaborate instruction.[6] Sheldon Appel defends the trial court's handling of the matter in this fashion on the ground that the court's instruction did not leave the ultimate probable cause issue to the jury, but simply required the jury to resolve the disputed "factual underpinnings" of the probable cause question.

As we explain below, we conclude that under a proper understanding of the probable cause element there were no disputed questions of fact relevant to probable cause to be submitted to the jury in this case, and for that reason it is clear that the trial court erred in submitting the issue to the jury in any form. Furthermore, it is apparent that the form of the probable cause instruction that was utilized in this case—which required the jury to determine, inter alia, whether A&O had "prosecuted claims which a reasonable lawyer would regard as tenable" (see fn. 6, *ante*)—cannot be squared with the fundamental purposes underlying the rule assigning the probable cause issue for resolution by the court, rather than by the jury. The instruction clearly operated to delegate the probable cause determination to the jury and deprived defendant of the protection afforded by the independent resolution of this element by the court.

Indeed, the impropriety of such an instruction was recognized by this court nearly a century ago in the *Ball* decision quoted above. As *Ball* put it, "[it is not] competent for the court to give to the jury a definition of probable cause, and instruct them to find for or against the defendant according as they may determine that the facts are within or without that definition. Such an instruction is only to leave to them in another form the function of determining whether there was probable cause. The court cannot divest itself of its duty to determine this question, however complicated or numerous may be the facts. It must instruct the jury upon this subject in the concrete, and not in the abstract, and must not leave to that body the office of determining the question, but must itself determine it . . . ." (*Ball* v. *Rawles, supra,* 93 Cal. at p. 228; see also *Williams* v. *Coombs, supra,* 179 Cal.App.3d 626, 635-638.)

Although we conclude that the trial court erred in leaving the probable cause decision to the jury, in fairness to the trial court we must recognize

---

[6] The instruction read in full: "To constitute probable cause for the prosecution of a civil proceeding against the plaintiff in this case, the evidence must establish that: [A&O], after a reasonable investigation and industrious search of legal authority, had an honest belief that their clients' claims were tenable, and that [A&O] prosecuted claims which a reasonable lawyer would regard as tenable, or did not unreasonably neglect to investigate the facts and law in making their determination to proceed with the prior action. If you find from all the evidence that the foregoing facts are true, you must find that there was probable cause for the prosecution of the civil proceeding against Sheldon Appel Company. If you find that such facts are not true, you must find that there was not probable cause for the prosecution of the civil proceeding against Sheldon Appel Company."

that the court's error was in large part a product of long-standing confusion in the case law over both the substantive content of the probable cause standard and the underlying facts which are relevant to the probable cause determination. While, as we have just discussed, the probable cause determination has always been considered a question of law for the court, the cases have also made clear that if the facts upon which the defendant acted in bringing the prior action "are controverted, they must be passed upon by the jury before the court can determine the issue of probable cause . . . . 'What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The former is exclusively for the court, the latter for the jury.' " (*Ball* v. *Rawles, supra,* 93 Cal. 222, 227. See Rest.2d Torts, § 681B, subd. (2)(a).)

The trial court and Court of Appeal, relying on a number of Court of Appeal decisions which we discuss below, concluded that under the probable cause standard enunciated in those decisions there were controverted factual questions in this case relevant to the probable cause determination which had to be submitted to the jury. Because we find that the decisions in question set forth an erroneous definition of the probable cause element, we conclude that a reassessment of those decisions is in order.

B. *Objective or Subjective Nature of Probable Cause Element*

The instruction on probable cause given in this case was derived from much-quoted dictum contained in the Court of Appeal opinion in *Tool Research & Engineering Corp.* v. *Henigson* (1975) 46 Cal.App.3d 675 [120 Cal.Rptr. 291]. In that case, the Court of Appeal affirmed summary judgment for the defendant, an attorney, in a malicious prosecution action, concluding that the trial court had correctly found that the plaintiff had failed to establish that the prior action had been instituted without probable cause. The *Tool Research* court quite properly rejected the plaintiff's contention that probable cause to institute an action exists only if an attorney is "convinced that the trier of fact would accept the evidence in favor of the cause [he represents]" (46 Cal.App.3d at p. 683), making it clear that the appropriate question is simply whether the prior action was legally "tenable." (*Ibid.*)

In the course of rejecting that contention, however, the *Tool Research* court included broad dictum which purported to set forth a general definition of the probable cause element for all cases in which an attorney is the subject of a malicious prosecution action. The court stated in this regard: "*An attorney has probable cause to represent a client in litigation when, after a reasonable investigation and industrious search of legal authority, he has an honest belief that his client's claim is tenable in the forum in which it*

*is to be tried. [Citations.] The test is twofold. The attorney must entertain a subjective belief in that the claim merits litigation and that belief must satisfy an objective standard.*" (Italics added.) (*Tool Research, supra,* 46 Cal.App.3d at p. 683.)[7]

Although this language has been repeated and applied uncritically in numerous subsequent Court of Appeal decisions, we believe that it is flawed in two separate respects: (1) in suggesting that the probable cause element requires an evaluation of an attorney's subjective belief in the tenability of a claim, and (2) in suggesting that the adequacy of the attorney's legal research is relevant to the probable cause element. We turn first to the "subjective belief" issue.

As discussed above, the "probable cause" element in the malicious prosecution tort plays a role quite distinct from the separate "malice" element of the tort. ■ Whereas the malice element is directly concerned with the *subjective* mental state of the defendant in instituting the prior action, the probable cause element calls on the trial court to make an objective determination of the "reasonableness" of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted. (See generally Dobbs, *Belief and Doubt in Malicious Prosecution and Libel* (1979) 21 Ariz.L.Rev. 607.) Because the malicious prosecution tort is intended to protect an individual's interest "in freedom from unjustifiable and unreasonable litigation" (see 1 Harper et al., The Law of Torts, *supra,* § 4.2, p. 407), if the trial court determines that the prior action was objectively reasonable, the plaintiff has failed to meet the threshold requirement of demonstrating an absence of probable cause and the defendant is entitled to prevail.

The *Tool Research* "subjective belief" dictum (46 Cal.App.3d at p. 683) alters the probable cause element in a fundamental respect. Under that dictum, even if a trial court finds that, on the basis of the facts known to the defendant attorney, the prior lawsuit *was* objectively reasonable—and thus that the malicious prosecution plaintiff was *not* subjected to an unjustified lawsuit—the court could not properly terminate the action in favor of the defendant so long as the plaintiff presented any evidence raising a question as to whether the defendant attorney subjectively believed in the tenability

---

[7] In framing the probable cause issue in these terms, the *Tool Research* court relied heavily on similar language in the earlier Court of Appeal opinion in *Murdock* v. *Gerth* (1944) 65 Cal.App.2d 170, 179 [150 P.2d 489]. In *Murdock,* as in *Tool Research,* the language was clearly dictum, for in that case, like *Tool Research,* no question was raised as to the adequacy of the attorney's research efforts and the appellate court ruled in favor of the attorney.

of the claim. And because the issue of the attorney's subjective belief or nonbelief in legal tenability would rarely be susceptible of clear proof and, when controverted, would always pose a factual question, the dictum would in many cases effectively leave the ultimate resolution of the probable cause element to the jury, rather than to the court.

Although past decisions of our own court are not as clear as they might be with respect to the "objective" versus "subjective" nature of the probable cause element (see *Franzen* v. *Shenk* (1923) 192 Cal. 572 [221 P. 932]; *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405]; *Bertero, supra,* 13 Cal.3d 43, 55), we find that, properly understood, the decisions do not support the *Tool Research* court's conclusion that the defendant's subjective belief *in the legal tenability* of the prior action is a necessary element of probable cause. As we explain, while our decisions do indicate that in some cases the defendant's subjective belief may be relevant to the probable cause issue, in all of the cases the "belief" in question related to the defendant's belief in, or knowledge of, *a given state of facts,* and not to the defendant's belief in, or evaluation of, *the legal merits of the claim.*

*Franzen* v. *Shenk, supra,* 192 Cal. 572, contains the most extensive discussion of the issue. In *Franzen,* the plaintiff, Mabel Franzen, instituted a malicious prosecution action against A.M. Shenk, a man with whom she had apparently had an affair, alleging that Shenk had maliciously instituted a prior proceeding seeking to have her declared insane. In defense of his conduct in instituting the prior proceeding, Shenk testified at the malicious prosecution trial that Franzen had made serious threats against his children and his wife, that he had reported those threats to his attorney, a prosecutor and a justice of the peace, and that he had thereafter instituted the sanity proceeding on their advice. Franzen testified, however, that she had never made any threats against Shenk's children or wife. On that state of the record, the trial court had granted a directed verdict in favor of Shenk.

On appeal, the *Franzen* court reversed the directed verdict in Shenk's favor, finding that because Shenk had testified that Franzen's threats against his family were the only basis for his belief in Franzen's insanity and because Franzen's and Shenk's testimony created a direct conflict on whether such threats had in fact ever been made, the trial court had erred in directing the verdict for Shenk without having the jury determine whether or not the threats had or had not been made. (*Franzen* v. *Shenk, supra,* 192 Cal. at p. 582.) In reaching this conclusion, the court explained, inter alia: " ' "Although the question of probable cause, as we have seen above, is a question of law, *yet the belief of the defendant in a state of facts* is itself a fact which it is proper to submit to the jury for its consideration; and whenever the good faith of the defendant, or his knowledge or belief in an

existing state of facts, is an element in determining whether there was probable cause, the court should submit that question to the jury. . . .' ' '' (*Id.* at pp. 576-577, italics added.) Because the evidence left open the possibility that Shenk may have testified falsely about Franzen's alleged threats—the crucial fact upon which the initial sanity proceeding was ostensibly based—the *Franzen* court concluded that the trial court could not properly determine that probable cause existed without having the jury resolve the conflict in the testimony with regard to such facts.

At the same time, however, the *Franzen* court made clear that it was not suggesting it would be necessary to submit any aspect of the probable cause issue to the jury if the relevant facts on which Shenk had acted were not in dispute. In this regard, *Franzen* expressly reaffirmed a line of prior decisions which had specifically established that "if there is no dispute concerning *the existence of the facts* relied upon to show probable cause, the trial court must then determine as a matter of law whether such undisputed facts do or do not warrant an inference of probable cause." (*Franzen v. Shenk, supra,* 192 Cal. at p. 578, italics added.)

Although in another passage *Franzen* itself speaks of evidence from which the jury could have inferred that Shenk "did not in fact believe that [Franzen] was insane" (192 Cal. at p. 582), and subsequent opinions in this court have sometimes referred to the defendant's subjective belief "in the validity of the claim asserted" as a component of probable cause (see *Bertero, supra,* 13 Cal.3d at p. 55; *Albertson, supra,* 46 Cal.2d at p. 382), in each of the cases what was disputed was not the defendant's subjective belief in the legal tenability of his claim, but rather the state of the defendant's knowledge of the facts on which his claim was based.[8] In essence, in each case the plaintiff's contention was that the prior action had been prosecuted "with knowledge of *the falsity* of the claim. . . ." (*Albertson, supra,* 46 Cal.2d at p. 382, italics added.)

---

[8] In *Albertson, supra,* 46 Cal.2d 375, 382, the malicious prosecution plaintiff—in challenging the defendant's action in filing a prior lis pendens—alleged that the defendant "well knew of the fact that he . . . was making unfounded and untrue statements as to the transfer and conveyance of said real property . . . [and] continued to assert claims falsely . . . to the aforementioned real property . . . ." In *Bertero, supra,* 13 Cal.3d 43, 53-55, the malicious prosecution plaintiff introduced evidence suggesting that the defendant did not believe the factual predicates of the prior cross-complaint and may not have made a full and specific disclosure of the facts to his attorney before the cross-complaint was filed.

The same is true with respect to a number of decisions which indicate that when the subject of a malicious prosecution action is a prior criminal proceeding the defendant's subjective belief in the "guilt" of the accused is relevant to the probable cause element. (See, e.g., *Harkrader* v. *Moore* (1872) 44 Cal. 144, 149-152.) Read in context, the reference in those decisions to the defendant's belief in the accused's "guilt" is to the defendant's belief " 'in *the truth* of the charge made against [the accused] in the prosecution complained of' " (*Franzen* v. *Shenk, supra,* 192 Cal. at pp. 578-579 [italics added, citation omitted]), and not to the defendant's subjective evaluation of the legal merits of the prosecution's case.

The importance of the distinction between the defendant's knowledge of facts and his subjective assessment of tenability was made clear by Chief Justice Taft of the United States Supreme Court in explaining the nature of the probable cause element of the analogous tort of wrongful arrest: "The want of probable cause . . . is measured by the state of the defendant's *knowledge,* not by his *intent.* It means the absence of probable cause known to the defendant when he instituted the suit. But the standard applied to defendant's consciousness is external to it. The question is not whether *he* thought the facts to constitute probable cause, but whether *the court* thinks they did." (*Director General* v. *Kastenbaum* (1923) 263 U.S. 25, 27-28 [68 L.Ed. 146, 147-148, 44 S.Ct. 52], italics added.)

When there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, *Franzen, supra,* 192 Cal. 572, and similar cases hold that the jury must resolve the threshold question of the defendant's factual knowledge or belief. Thus, when, as in *Franzen,* there is evidence that the defendant may have known that the factual allegations on which his action depended were untrue, the jury must determine what facts the defendant knew before the trial court can determine the legal question whether such facts constituted probable cause to institute the challenged proceeding. As Chief Justice Taft's explanation of the probable cause element indicates, however, the jury's factual inquiry into the defendant's belief or knowledge is not properly an inquiry into "whether [the defendant] thought the facts to constitute probable cause" (*Director General, supra,* 263 U.S. 25, 28 [68 L.Ed. 146, 148]); when the state of the defendant's factual knowledge is resolved or undisputed, it is the court which decides whether such facts constitute probable cause or not.

██ Accordingly, when, as in this case, the facts known by the attorney are not in dispute, the probable cause issue is properly determined by the trial court under an objective standard; it does not include a determination whether the attorney subjectively believed that the prior claim was legally tenable. (See Prosser & Keeton on Torts, *supra,* § 119, pp. 876-877; Dobbs, *Belief and Doubt in Malicious Prosecution and Libel, supra,* 21 Ariz. L. Rev. 607, 609-611.)

Lest there be any confusion, however, we strongly emphasize that our conclusion in this regard does not by any means suggest that an attorney who institutes an action which he does not believe is legally tenable is free from the risk of liability for malicious prosecution. If the trial court concludes that the prior action was not objectively tenable, evidence that the defendant attorney did not subjectively believe that the action was tenable would clearly be relevant to the question of malice. Inasmuch as an attorney who does not have a good faith belief in the tenability of an action will

normally assume that a court is likely to come to the same conclusion, the malicious prosecution tort will continue to deter attorneys from filing actions which they do not believe are legally tenable.

Furthermore, the probable cause element, as so defined, imposes no improper or unjustified hardship on a malicious prosecution plaintiff. If a court finds that the initial lawsuit was in fact objectively tenable, the court has determined that the fundamental interest which the malicious prosecution tort is designed to protect—"the interest in freedom from *unjustifiable* and *unreasonable* litigation" (1 Harper et al., The Law of Torts, *supra*, § 4.2, p. 407, italics added)—has not been infringed by the initial action. Under such circumstances, it is not unfair to bar a plaintiff's suit for damages even if the plaintiff can show that its adversary's law firm did not realize how tenable the prior claim actually was, since the plaintiff could properly have been put to the very same burden of defending an identical claim if its adversary had simply consulted a different, more legally astute, attorney. This is a classic case of "no harm, no foul."

### C. Irrelevance of Attorney Research to Probable Cause

As noted above, in addition to suggesting that a plaintiff may establish an absence of probable cause by demonstrating that the defendant attorney did not subjectively believe in the tenability of the prior claim, the *Tool Research* court further suggested that a plaintiff might prove a lack of probable cause by showing that the attorney had failed to conduct "a reasonable investigation and industrious search of legal authority . . ." before instituting the prior action. (*Tool Research, supra,* 46 Cal.App.3d at p. 683.) Although that statement was only dictum in *Tool Research*—as no question had been raised as to the adequacy of the defendant's research—at least two subsequent Court of Appeal decisions have relied on the *Tool Research* language to hold that a malicious prosecution plaintiff may establish a lack of probable cause simply by showing that its former adversary's attorney failed to perform reasonable legal research or factual investigation before filing a claim on his client's behalf. (See *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166, 188-190 [156 Cal.Rptr. 745]; *Williams* v. *Coombs, supra,* 179 Cal.App.3d 626, 640-644.) In the present case, the lower courts apparently relied on these precedents to conclude that because there was a dispute in the evidence as to the extent and adequacy of the legal research conducted by A&O prior to the filing of the earlier action, there was a crucial factual issue to be submitted to the jury on the probable cause element.

We conclude that the *Tool Research* decision, *supra,* 46 Cal.App.3d 675, 683, significantly and improperly altered the probable cause element by

suggesting that an attorney's reasonable investigation and industrious search of legal authority is an essential component of probable cause. This portion of the *Tool Research* dictum again shifts the focus of the probable cause inquiry from the objective tenability of the prior claim to the adequacy of the particular defendant's performance as an attorney. Furthermore, this component is not only fundamentally incompatible with the objective nature of the probable cause determination, but it is also at odds with a consistent line of California decisions which have made clear that an attorney's duty of care runs primarily to his own client rather than to the client's adversary, and which—on the basis of important policy considerations— have precluded the adversary from maintaining a negligence cause of action against its opponent's attorney. (See, e.g., *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737]; *Norton v. Hines, supra,* 49 Cal.App.3d 917, 923.) Allowing inadequate research to serve as an independent basis for proving the absence of probable cause on the part of an attorney would tend to create a conflict of interest between the attorney and client, tempting a cautious attorney to create a record of diligence by performing extensive legal research, not for the benefit of his client, but simply to protect himself from his client's adversaries in the event the initial suit fails.

As we have explained above, if the trial court concludes that, on the basis of the facts known to the defendant, the filing of the prior action was objectively reasonable, the court has necessarily determined that the malicious prosecution plaintiff was not subjected to an unjustified lawsuit. When the court has made such a determination, there is no persuasive reason to allow the plaintiff to go forward with its tort action even if it can show that its adversary's attorney did not perform as thorough an investigation or as complete a legal research job as a reasonable attorney may have conducted. Permitting recovery on such a basis would provide the plaintiff with a windfall; since the prior action was objectively tenable, the plaintiff could properly have been put to the very same burden of defense if its adversary had simply hired more thorough counsel.

Of course, as with the question of the defendant's subjective belief in the tenability of the claim, if the trial court determines that the prior action was not objectively tenable, the extent of a defendant attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice. We conclude, however, that the adequacy of an attorney's research is not relevant to the probable cause determination.[9]

---

[9] To the extent that they are contrary to the conclusions reached in this decision, the *Tool Research* decision, *supra,* 46 Cal.App.3d 675, and its progeny are disapproved.

D. *Expert Testimony and Probable Cause*

The trial court's confusion as to the proper role of the court and the jury in the probable cause determination also led to yet another error in this case. As noted above, the court, over objection, permitted attorneys to be called as expert witnesses to give their opinions as to whether a reasonable attorney would conclude that the claims advanced in the prior action were tenable.

■ In light of our earlier discussion, explaining that the objective tenability of the prior action is a question of law to be determined by the court, it is clear that the trial court erred in admitting this evidence. "[I]t is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide." (*Carter* v. *City of Los Angeles* (1945) 67 Cal.App.2d 524, 528 [154 P.2d 907]; accord *L.A. Teachers Union* v. *L.A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 556 [78 Cal.Rptr. 723, 455 P.2d 827]; *Downer* v. *Bramet* (1984) 152 Cal.App.3d 837, 842 [199 Cal.Rptr. 830].) We agree with the prior cases which have concluded that this general principle applies to the probable cause element of the malicious prosecution tort. (See, e.g., *Williams* v. *Coombs, supra,* 179 Cal.App.3d 626, 638; *Carrol* v. *Kalar* (1976) 112 Ariz. 595, 599 [545 P.2d 411, 415].)

IV

■ As we have explained, the trial court in this case erred in submitting the probable cause issue to the jury, because this element of the malicious prosecution tort is always properly determined by the court. Although it is sometimes necessary to submit preliminary factual questions to the jury when there is a dispute as to facts which the defendant knew when he instituted the prior action, in this case there was no dispute as to facts of which A&O was aware when it brought the prior action on its client's behalf. It was uncontroverted that CKM informed A&O of the details of the earlier real estate transactions and Sheldon Appel's post-purchase bulk sale offer, and that A&O filed the declaratory relief complaint and recorded the lis pendens on the basis of those facts. Under these circumstances, it was the responsibility of the trial court to determine whether Sheldon Appel had established that A&O acted without probable cause in filing the lis pendens and the lien claim.

We need not remand the matter to the trial court, however, for we are as in as good a position as that court to resolve the determinative legal question—namely, whether there was probable cause to file the lis pendens and

the supporting lien claim. ■ In resolving that issue, however, we must first clarify by how stringent a standard probable cause should be tested.

A number of early cases, discussing the probable cause issue in relation to a claim of a malicious prosecution of a criminal charge, defined probable cause as "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." (See, e.g., *Potter* v. *Seale, supra,* 8 Cal. 217, 221.) In the context of an action alleging malicious prosecution of a prior civil suit, however, it has long been recognized that it is not "true charges" but rather legally tenable claims for relief that the law seeks to protect. (See, e.g., *Murdock* v. *Gerth, supra,* 65 Cal.App.2d 170, 178-179. See generally Rest.2d Torts, § 675, coms. c, d, e, f and g.)

In addressing the somewhat related question as to the appropriate standard for determining the frivolousness of an appeal in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179], we concluded that an appeal could properly be found frivolous only if "any reasonable attorney would agree that the appeal is totally and completely without merit." (P. 650.) In arriving at that standard, we reasoned that "any definition [of frivolousness] must be read so as to avoid a serious chilling effect on the assertion of litigants' rights. . . . Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . ." (*Ibid.*)

In *Williams* v. *Coombs, supra,* 179 Cal.App.3d 626, 638-639, the Court of Appeal suggested that the *Flaherty* standard was insufficiently stringent as a test for probable cause in the malicious prosecution context, and instead proposed that probable cause be measured "by whether a prudent attorney, after such investigation of the facts and research of the law as the circumstances reasonably warrant, would have considered the action to be tenable on the theory advanced." (179 Cal.App.3d at p. 639.)

Although it is not clear to us that the *Williams* "prudent attorney" test would, in practice, necessarily lead to results different from the *Flaherty* "reasonable attorney" standard, to the extent the two formulations do differ we believe that the less stringent *Flaherty* standard more appropriately reflects the important public policy of avoiding the chilling of novel or debatable legal claims. That policy is no less applicable to the institution of actions at the trial stage than to the pursuit of appeals, and, contrary to the *Williams* court's suggestion (see 179 Cal.App.3d at p. 638), we do not believe there is any reason to afford litigants and their attorneys less protection from subsequent tort liability than it is to shield them from court-imposed sanctions within the initial action. (See, *ante,* pp. 873-874; see also

*Central Florida Mach. Co., Inc.* v. *Williams* (Fla.App. 1983) 424 So.2d 201, 203-204 [46 A.L.R.4th 243].) In contrast to the "prudent attorney" language of *Williams,* the *Flaherty* standard—modified to fit this context, i.e., whether any reasonable attorney would have thought the claim tenable—may make it clearer that in evaluating whether or not there was probable cause for malicious prosecution purposes, a court must properly take into account the evolutionary potential of legal principles. (See, e.g., Rest.2d Torts, § 675, com. f.)

 Applying the appropriate probable cause standard to the facts of this case, we conclude that the dissenting justice in the Court of Appeal was correct in finding that the lien claim pursued by A&O, although not ultimately successful, was legally tenable and thus that there was probable cause to support both the lien claim and the lis pendens.[10] At the time the lien claim was filed, there was at least one prior California decision which had suggested that a vendor's lien, under Civil Code section 3046, might well be available to protect the interests of a seller of real property under facts somewhat comparable to the circumstances in this case (see *Edwards-Town, Inc.* v. *Dimin* (1970) 9 Cal.App.3d 87, 92-94 [87 Cal.Rptr. 726]), and, in addition, there were a variety of decisions which had recognized the right of a court to impose an equitable lien on property—even in the absence of an express contractual security provision—to effectuate the intent of the parties or to prevent unjust enrichment. (See generally 3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 17, p. 530 and cases cited.) Although the trial court in the prior action evidently concluded that the past decisions should not be applied or extended to afford CKM a lien on the property in this case and accordingly expunged the lis pendens, in light of both the existing authorities and the leeway a litigant must be given to argue for an evolution of legal precedents, we conclude that the lien claim interposed by A&O was legally tenable. Accordingly, we conclude that the prior action was not instituted without probable cause.

V

The judgment of the Court of Appeal is reversed, and the case is remanded with directions to order the entry of judgment in favor of A&O on the malicious prosecution claim.

---

[10] Sheldon Appel does not suggest that the lis pendens was improper if there was probable cause to institute the lien claim. (See, e.g., *Okuda* v. *Superior Court* (1983) 144 Cal.App.3d 135, 141 [192 Cal.Rptr. 388]; *Coppinger* v. *Superior Court* (1982) 134 Cal.App.3d 883, 891 [185 Cal.Rptr. 24].)

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kaufman, J., concurred.