Filed 3/5/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| QINGYU ZHANG, | B292418 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC068282) |
| v. | |
| ANTHONY CHU, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William D. Stewart, Judge.  Affirmed.

Liu Law and Long Z. Liu for Plaintiff and Appellant.

Law Offices of Dilip Vithlani and Dilip Vithlani for Defendant and Respondent.

_____

In this *malicious* prosecution suit, the plaintiff lacked evidence showing the defendant acted with *malice*. The trial court thus rightly granted the defendant's special motion to strike the plaintiff's meritless suit. We affirm.

I

We begin with a brief factual overview.

Mr. Anthony Chu is the defendant lawyer in this malicious prosecution case. Mr. Qingyu Zhang sued lawyer Chu because Chu had added Zhang as a defendant in an earlier and underlying lawsuit. Chu dismissed Zhang from that underlying case without prejudice, which prompted Zhang to sue Chu for malicious prosecution, which prompted Chu to file a special motion to strike Zhang's malicious prosecution case, which the trial court granted. The trial court struck Zhang's malicious prosecution case for want of malice. Malice is a vital element of malicious prosecution, and Zhang had no proof of it.

In every malicious prosecution case, there is an earlier and underlying case. We next explain that case, which has continued in parallel with this other one.

The underlying case was *Qi v. Bluestar Express Group Inc.* (Super. Ct. L.A. County, 2019, No. KC068561) (*Qi v. Bluestar*), which is a wage-and-hour case against a trucking company called Bluestar Express Group, Inc. Lawyer Chu represented a worker named Jiang Qi. On behalf of Qi, Chu filed the action alleging Bluestar had worked Qi 24 hours a day and seven days a week at a trucking warehouse. Bluestar allegedly required Qi to work whenever a truck came in and paid no overtime, gave him improper breaks, and otherwise violated the Labor Code.

In addition to Bluestar, Chu's original complaint for Qi named Ms. Yidan Zhang (no relation to appellant Qingyu Zhang)

2

as an individual defendant, together with 20 Doe defendants. The date of Chu's original complaint was June 29, 2016.

According to the complaint, Bluestar's address is 719 S. Nogales Street, City of Industry, CA 91748.

Qi's complaint alleged Bluestar was a sham corporation, claiming it had been set up with illusory capital to evade potential judgment creditors like Qi, should he win a judgment against Bluestar.

As this allegation suggested, Qi and Chu had suspicions about the extent of Bluestar's corporate integrity and independence.

Qi later declared others worked at the 719 Nogales Street address, but those other employees and Qi did not all have the same employer. The businesses there shared employees and pooled their resources. It appeared to Qi another company called New Diamond Trucking, Inc. (New Diamond) was combining its business efforts with Bluestar at that same address, sometimes as though it was one business.

Chu later declared he discovered New Diamond trucking company operates at that same 719 Nogales Street address. The record shows many connections between Bluestar, New Diamond, and Qingyu Zhang.

Chu learned Qingyu Zhang was the sole shareholder of New Diamond.

Chu found the California Secretary of State listed Qingyu Zhang as chief executive officer and as a director of New Diamond, which listed its business and executive offices as 719 Nogales Street, City of Industry, CA 91748.

Zhang admits he is owner, CEO, and director of New Diamond.

Qingyu Zhang's son, Tom (also known as "Tao") Zhang, is the agent for service of process for New Diamond.

New Diamond made $40,000 and $50,000 payments to Bluestar.

Chu testified the trial court sanctioned Bluestar $5,420 for discovery violations, but Bluestar paid Chu this sum with a check from New Diamond. The check is signed in what appear to be non-English characters. The signature appeared to Chu to be that of Qingyu Zhang.

There were other instances in which Chu concluded one person was signing checks for both Bluestar and New Diamond.

Chu's online investigation revealed a pattern. It appeared a group of individuals, including Qingyu Zhang and his son Tom Zhang, operated a single enterprise by forming and then dissolving several different companies. Two of the dissolved companies were "Sunlight Logistics" and "Sunlight Logistics Group." Both also had operated at the same 719 Nogales Street address. The same person had signed documents for all these companies.

On September 14, 2017, Chu used Doe substitutions to add Qingyu Zhang and others to *Qi v. Bluestar* on alter ego and single enterprise theories.

When Zhang entered the case, he retained the same law firm as the one representing Bluestar.

On January 3, 2018, Zhang filed a motion under section 128.7 of the Code of Civil Procedure challenging Chu's decision to add Zhang to Qi's case. Chu declared that, rather than undertake the cost and risk of opposing Zhang's section 128.7 motion, Chu dismissed Zhang without prejudice on January 22, 2018, during the section 128.7 safe harbor period.

On January 19, 2018, Chu amended Qi's complaint to add New Diamond as a defendant.

Zhang sued Chu for malicious prosecution on March 21, 2018. Chu filed a special motion to strike Zhang's action on May 29, 2018. The trial court issued a 15-page tentative ruling and heard argument on June 22, 2018. The court ordered further briefing, issued an amended 22-page tentative ruling, and held a second hearing on July 27, 2018.

The trial court granted Chu's special motion to strike. Zhang appeals that order.

Meanwhile, the underlying case of *Qi v. Bluestar* has continued forward in the trial court.

## II

The trial court properly granted Chu's special motion to strike. Zhang lacked proof he probably would succeed in proving Chu acted with malice. No malice meant no malicious prosecution, which meant defeat for Zhang.

## A

Three bodies of law are germane. First, we summarize law governing special motions to strike. Second, we survey the tort of malicious prosecution. Third, we touch upon sham corporations and alter egos.

## 1

The special motion to strike procedure is a recent creature of statute. The California Legislature passed this act in 1992. (Code Civ. Proc., § 425.16.)

A special motion to strike involves two steps. The first step is not relevant here because all sides agree Chu's motion satisfied it. The second step is our sole focus.

The second step in a special motion to strike is a summary-judgment-like procedure to determine whether plaintiff Zhang "established that there is a *probability* that [Zhang] will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1), italics added.)

We independently review trial court rulings on special motions to strike. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

2

We turn to the tort of malicious prosecution. Unlike the special motion to strike, which springs from a modern California statute, the roots of the common law tort of malicious prosecution go deep into the past. (E.g., *Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis* (1979) 88 Yale L.J. 1218, fn.1 [citing Code of Hammurabi, Babylonia, 2250 B.C.].) We sketch this tort's modern dimensions.

There are three elements to malicious prosecution. The plaintiff, who was the defendant in the underlying action, must prove (1) the defendant was responsible for the underlying lawsuit, which ended in a legal termination favorable to the plaintiff; (2) the defendant brought the underlying lawsuit without probable cause; and (3) the defendant brought the underlying lawsuit with malice. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)

We can nickname these three elements as favorable termination, probable cause, and malice.

All three elements are essential. The trial court ruled Zhang failed to establish the third element of malice, so we focus on that ruling. We do not address the other elements.

The malice element of malicious prosecution has an elaborated common law meaning. Malice may refer simply to subjective hostility or ill will, but it also has rather different meanings as well. We explore this complex legal concept.

Justice Roger Traynor on behalf of a unanimous Supreme Court quoted and adopted the Restatement's definition of malice in 1956. We italicize the vital portions of this classic and governing definition:

"The malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff but exists when the proceedings are instituted *primarily for an improper purpose. . . .* It has been pointed out that the 'principal situations in which the civil proceedings are initiated for an improper purpose are those in which (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement *which has no relation to the merits of the claim.*' " (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 383, italics added, quoting Rest., Torts, § 676, com. b.)

This fourth definition of malice is the pertinent one here. This case does *not* involve evidence about the first three: (1) about Chu's lack of belief that Qi's claim would not be held valid, (2) about Chu's personal hostility or ill will toward Zhang, or (3) about depriving a person of a beneficial use of property. We thus concentrate on the fourth definition.

The fourth definition of malice requires plaintiffs to prove the defendant initiated proceedings to force a settlement that *has no relation to the merits of the claim*.

An alternative and equivalent phrasing is that the defendant initiated the lawsuit "primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings are based." (Rest., Torts, § 674, subd. (a)(ii).)

As adapted to this suit's procedural posture, then, Chu's motion required Zhang to offer evidence Chu initiated proceedings against Zhang to force a settlement having *no relation to the merits* of Qi's wage-and-hour claim.

Supreme Court law specifies that the malice element relates to the *subjective* intent or purpose with which Chu brought Zhang into the case. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874 (*Sheldon*).)

3

A third body of law concerns sham corporations and "piercing the veil."

Courts may disregard the corporate entity when the corporation is merely the alter ego of its stockholders. Called piercing the corporate veil, this equitable doctrine gives creditors access to the stockholders' personal assets when the corporation's assets are so minimal that their small size would defeat a plaintiff's judgment against the corporation, thus creating an inequitable result. (See, e.g., Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2019) §§ 2:2016 to 2:2024, pp. 2(II)-297 to 2(II)-299.)

A variety of factors informs this equitable analysis about when to pierce the veil. These factors include the following:

- whether ownership of the corporation's stock is concentrated in *one individual or family*,
- whether there is use of the *same office or business location*,
- whether there is employment of the *same employees*, and
- whether there is employment of the *same attorney*. (*Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 839.)

B

We apply this law to the facts of this case.

To briefly recap, it is the fourth definition of the third element of malice that is our focus. The procedural posture and this definition of malice imposed a burden on Zhang to offer evidence showing his probability of success in proving Chu sued him for a reason having *no relation to the merits* of Qi's wage-and-hour claim.

As a matter of law and logic, the "no relation to the merits" element meant it would not be enough for Zhang to show Chu added Zhang to the wage-and-hour case simply to "force a settlement." Forcing a settlement is the omnipresent and proper goal of litigation. One litigator is constantly trying to convince the other to settle on the one litigator's terms, on pain of eventual and costly defeat. Parties turn to the force of litigation when less coercive settlement efforts have failed.

Attempts to force settlements thus are common. To make a litigation motive improper, to make it "malicious," it takes more than a simple desire to win. The attempt to force a settlement must be *unrelated to the merits*.

9

The "unrelated to the merits" element meant Zhang had to show Chu added Zhang to the case for a reason unrelated to the merits of the wage-and-hour case. By requiring Zhang to prove Chu's reason was not related to the merits, this definition required Zhang to prove a negative: that Chu's reason for adding Zhang was *not* related to the merits of the case. Proving a negative is hard, and intentionally so for this tort, which is disfavored. (See *Sheldon, supra*, 47 Cal.3d at pp. 872–874 [malicious prosecution is a disfavored tort because it tries to solve the problem of excessive litigation with more litigation, and so it is advisable to retain traditional limitations on the tort].)

Determining whether reasons are unrelated to the merits requires familiarity with the merits.

In wage-and-hour cases, searching for alter egos can be, and typically is, on the merits. Plaintiffs must worry about this issue at the outset of their case. A common reason for adding individuals as defendants to wage-and-hour litigation is plaintiffs' fear of procuring a worthless judgment. A judgment is worthless if it is against an entity that is merely an empty corporate shell. This is not a problem when the defendant is a Fortune 500 corporation and a plaintiff has confidence the corporate entity has substantial assets. But wage-and-hour cases sometimes are against employers of small size or of unknown substance. If a named defendant entity indeed is merely a shell, the supposedly victorious plaintiff can be left with few or no assets against which to levy. The plaintiff's hard-won judgment then is worthless as a practical matter. From the plaintiff's perspective, the litigation would have been in vain. For this reason, it is common in wage-and-hour litigation for plaintiffs to

10

search for people they suspect may be alter egos of corporate shells.

Zhang thus had to establish this reason was *not* the subjective purpose Chu had for adding Zhang as a Doe defendant. That reason -- searching for prospective alter egos -- would have been properly related to the merits of this litigation. Zhang had to disprove it.

Zhang failed in this quest. The trial court ruled none of his evidence established Chu acted with malice.

Zhang attacks the trial court ruling with a scattershot of 10 invalid arguments. His points are numerous and insubstantial. We treat them in turn.

First, Zhang argues the trial court erred in requiring him to prove a "probability" of succeeding on the malice element. Zhang claims the court elevated the legal standard in a way that "was unexplained and unwarranted." Zhang's argument ignores the statute, which specifies Zhang must establish "a *probability* that [Zhang] will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1), italics added.) The trial court properly applied the letter of the statute.

Second, Zhang argues Chu added Zhang and five others as Doe substitutions "in a single day without any change to the original complaint." The *fact* Chu added Does, however, does not show *why* Chu added Does. Zhang asserts in passing that Chu "had been fully aware" of these Does' "absolute lack of connections to the underlying employment lawsuit." Zhang offers no citation to support this factual assertion, which we disregard.

Third, Zhang argued to the trial court that Chu's pattern of settlement demands showed Chu added Zhang to the case for a

reason unrelated to the merits. The pattern of settlement demands was as follows:

1. March 15, 2016 -- Chu made a prelitigation demand of $347,011.04.
2. June 29, 2016 -- Chu filed the *Qi* action.
3. July 24, 2017 -- Chu made a settlement offer of $500,000. Chu explained he calculated this case valuation by adding the sums Qi was due for overtime, failure to pay minimum wage, failure to provide breaks, pay stub violations, waiting time penalties, and attorneys fees.
4. September 14, 2017 -- Chu added Zhang to the *Qi* action via a Doe substitution.
5. October 18, 2017 -- Chu made a settlement offer of $150,000 that would expire upon the filing of answers by the Doe defendants.

The pattern of Chu's settlement demands thus was $347,011.04, then $500,000, then $150,000.

This pattern of demands logically shows nothing about Chu's reason for adding Zhang to the lawsuit. Zhang's insistence this pattern shows improper extortion is invalid. Chu's demands may have been accurate reflections of his evolving analyses of the case's value, or tactical bluffing, or alternating moods of optimism and panic, or a combination of all the above, or something else entirely. The pattern of demands is not evidence of Chu's subjective reason for adding Zhang to the case.

Fourth, Chu specified his settlement offer would expire when and if Zhang answered. Nothing about Chu's deadline shows malice. For a host of reasons, negotiators routinely put conditions on settlement offers. Nothing about this tactic shows

12

Chu's subjective mental state when he added Zhang to the case. The inference Zhang urges is free of logical content.

Fifth, Zhang argues Chu added New Diamond *after* adding Zhang, but Chu should have sued New Diamond *before* suing Zhang if Chu truly believed the alter ego theory. Zhang claims "[t]his unorthodox sequence of suing under [the] alter ego theory can hardly be anything but [an] aim to force a settlement from [Zhang's son] Tom Zhang." This argument is difficult to follow. The premise is one we do not accept: there is some accepted orthodoxy about the proper sequence of adding corporate and individual defendants. Zhang cites no authority for his claim Chu's decisionmaking was "unorthodox."

Sixth, Zhang argues Chu dismissed Zhang without prejudice after Zhang filed his sanctions motion under section 128.7 of the Code of Civil Procedure. This argument founders on the fact the simple explanation for Chu's dismissal is that Zhang's motion cowed Chu.

Seventh, Zhang argues Chu sued him for an improper purpose because Chu did not perform enough research before adding Zhang to Qi's case. Zhang, however, cites no evidence that Chu's research was substandard. These pages of Chu's opening brief contain no record citations.

In the course of this argument, Zhang admits he owns New Diamond, but he asserts New Diamond is "totally unrelated" to Bluestar. Zhang does not support this factual assertion with record citations.

Eighth, Zhang notes the trial court initially mistook Yidan Zhang as Qingyu Zhang's son. The court then held a further hearing at which all agreed that Tom Zhang, not Yidan Zhang, is Qingyu Zhang's son, and that Yidan Zhang is a woman unrelated

13

to Qingyu Zhang. The court's final ruling reflected this correction. This temporary mix-up was not evidence of Chu's malice.

Ninth, Zhang argues the trial court's finding on element one -- no probable cause -- should satisfy element three: malice. This argument is legally invalid. The two elements are distinct. (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 493–499.)

Tenth, Zhang argues the trial court's reliance upon *Daniels v. Robbins* (2010) 182 Cal.App.4th 204 was misplaced. The trial court cited *Daniels* as authority it could decide whether there was any triable issue on malice as a matter of law. (See *id.* at p. 227.) Zhang does not dispute *Daniels* is good law. He merely asserts he has a stronger case than the plaintiffs in *Daniels* and he deserves a jury trial. This argument fails because Zhang lacks evidence of malice.

In sum, Zhang offered no evidence he had a probability of success on his malicious prosecution claim. The trial court was right to grant Chu's special motion to strike Zhang's meritless suit. We need not and do not reach Chu's other arguments about whether Chu's case against Zhang had been terminated in Zhang's favor or whether Chu lacked probable cause to sue Zhang.

14

DISPOSITION

We affirm the judgment and award costs to Chu.


WILEY, J.


We concur:


GRIMES, Acting P. J.


STRATTON, J.