Filed 5/27/15  Vaughn v. Darwish CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JACK VAUGHN et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>BARBARA DARWISH et al.,<br><br>    Defendants and Appellants. | B253694<br><br>(Los Angeles County<br>Super. Ct. No. BC521721) |

APPEAL from orders of the Superior Court of Los Angeles County. Richard L. Fruin, Jr., Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, Caroline Chan for Defendants and Appellants Barbara Darwish, David Darwish, Ginko Rose Ltd. and Logerm LLC.

The Law Offices of Rosenthal & Associates, Lisa F. Rosenthal for Defendant and Appellant Lisa F Rosenthal.

Mesisca Riley & Kreitenberg, Dennis P. Riley, Rena E. Kreitenberg for Plaintiffs and Respondents.

_____

Appellants sought to strike respondents' malicious prosecution action as a Strategic Lawsuit Against Public Participation (SLAPP). (Code Civ. Proc., § 425.16.)[1] The trial court denied appellants' special motions to strike, finding that respondents established a reasonable probability of prevailing. We affirm.

## BACKGROUND

Plaintiffs and respondents Jack Vaughn, Esmeralda Hernandez, Wayne Hart, Dennis Goldson, Carlos Rodriguez, and Ernest Johnson are long-time tenants of rental property (the property) located on Hyperion Avenue in Los Angeles.

Defendants and appellants David Darwish and Barbara Darwish have worked together in the real estate field for many years, buying and selling properties, repairing and improving buildings, and managing properties, including apartment buildings and houses with tenants. Barbara and David[2] participated in a foreclosure auction of the property in 2010, and, upon successfully bidding for the property, Barbara took title to the property as an individual. Thereafter, the property was conveyed to defendant and appellant Gingko Rose Ltd., a partnership in which Barbara and David have interests. Defendant and appellant Logerm LLC is the general partner of Gingko Rose Ltd.[3]

### The first unlawful detainer action

In September 2010, the City of Los Angeles Department of Building and Safety issued a "substandard order" on the property, finding that the property was being used as an unapproved boarding house and ordering the Darwishes to "[d]iscontinue the use and occupancy of all buildings or portions thereof occupied for living, sleeping, cooking or dining purposes which were not designed or intended to be used for such occupancies."

---

[1]    Unless otherwise noted, all further statutory references are to the Code of Civil Procedure.

[2]    To avoid confusion, we refer to the Darwishes by their first names.

[3]    David, Barbara, Gingko Rose Ltd., and Logerm LLC, including various Darwish trusts referenced in the record, are generally referred to hereinafter as the Darwishes.

The order listed numerous maintenance and repair issues to be fixed within 90 days. Eventually, the defects were remedied, and the substandard order was terminated in March 2012.

Meanwhile, two days after the substandard order was issued, a notice to quit was posted at the property. In October 2010, the Darwishes filed an unlawful detainer action against Walter Majano, the prior owner of the property, seeking possession of the property.[4] The Darwishes were represented by defendants and appellants Lisa Rosenthal and Rosenthal & Associates.[5]

Soon after the filing of the unlawful detainer action, the Los Angeles Housing Department (LAHD) sent a letter to Rosenthal, informing her that the property was subject to the Los Angeles Rent Stabilization Ordinance (LARSO) and that the notice to quit did not comply with the LARSO. The letter demanded that the notice to quit be cancelled. Appellants did not cancel the notice. Several weeks later, LAHD sent a second letter, again demanding that the defective notice be cancelled, but also informing appellants that the property's tenants could be evicted if a proper notice to quit was served and relocation benefits were paid.

Appellants continued to pursue the unlawful detainer action, however, and respondents (who by then had appeared in the case) filed a motion for summary judgment. The motion for summary judgment was granted in January 2011, with the trial court finding that respondents were valid tenants and that the unlawful detainer action was filed prematurely.

### The second unlawful detainer action

In February 2011, the Darwishes, again represented by Rosenthal, filed a second unlawful detainer complaint. Among other things, the complaint alleged that respondents

---

[4]     It is unclear why Majano was named as the defendant, since he did not live at the property.

[5]     We refer to Lisa Rosenthal and Rosenthal & Associates as Rosenthal.

refused the Darwishes access to the property so that they could remedy the deficiencies stated in the substandard order.

In March 2011, LAHD sent another letter to the Darwishes. The letter noted that, in order to properly evict the tenants, the Darwishes were required to pay respondents for relocation assistance. In addition, the letter stated that "pursuant to section 151.05 of the Los Angeles Municipal Code, landlords may not demand or accept rent from tenants without first paying annual registration fees for their rental units and obtaining a valid rental unit registration certificate from LAHD."

The second unlawful detainer action went to trial, and in August 2011, a motion for judgment was entered in favor of respondents. The court found that the Darwishes failed to comply with their own notice to enter the property.

**The underlying unlawful detainer actions**

On March 23, 2012, the Darwishes sent to LAHD a letter and check for the LARSO fees. The letter stated, in part, "Enclosed please find a check for the Registration of '7' rooms which are currently rented individually at [the property]. . . . This is the first time that the property is being registered."

A month later, the Darwishes served on each respondent separate three-day notices to quit. The notices demanded 10 months of "delinquent" rent from each respondent.

Shortly thereafter, the Darwishes, again represented by Rosenthal, filed unlawful detainer actions against each respondent. As did the notices to quit, the complaints stated that 10 months of past-due rent was owed. The complaints attached copies of the notices to quit, and every complaint was verified by David.

Trial for two respondents, Rodriguez and Hart, was held in July 2012. The trial court issued its statement of decision in September 2012. The decision stated that the Darwishes failed to prove they were entitled to possession, payment of rent, damages, or any other relief sought. Among other things, the trial court found that under the LARSO, no landlord may demand or accept rent, or validly serve a notice to quit, unless the property is registered, and there was no evidence that LAHD ever issued a registration certificate for the property. Additionally, there was no evidence that the Darwishes ever

4

demanded payment of rent from tenants at the property prior to the April 2012 notices to quit. Thus, the Darwishes failed to prove they were entitled to collect rent for the 10-month period predating the notices to quit. Furthermore, there was no evidence that the Darwishes tendered the relocation fees necessary to gain possession of the property. The trial court also found that the notices to quit were improper because they demanded cash or cash equivalent in violation of Civil Code section 1947.3, and that the substandard order precluded the Darwishes from seeking rent until its termination in March 2012.

Although the unlawful detainer actions against the remaining four respondents appeared to present the same issues as those decided with respect to Rodriguez and Hart, appellants did not immediately dismiss the remaining cases. Respondents' attorney repeatedly requested that Rosenthal dismiss the other four actions, but only after respondents' attorney threatened to file motions for summary judgment did appellants dismiss the remaining cases, in December 2012.

### The instant malicious prosecution action

In September 2013, respondents filed this malicious prosecution action against appellants. Respondents alleged that appellants knew respondents' tenancies were protected under the LARSO, and that appellants' failure to comply with the LARSO precluded the collection of rent or commencement of eviction proceedings. According to respondents, appellants prosecuted the underlying unlawful detainer actions to retaliate against and harass respondents, and to force them to vacate the property without payment of relocation assistance fees.

In October 2013, Rosenthal filed an anti-SLAPP motion to strike. Rosenthal argued that the prosecution of the unlawful detainer actions was protected activity within the meaning of section 425.16, and that each of the malicious prosecution actions was tenable. The trial court denied Rosenthal's motion.

The Darwishes filed their anti-SLAPP motion in November 2013. They argued that respondents could not establish a probability of prevailing in their malicious prosecution action because there was probable cause to file and prosecute the underlying unlawful detainer actions, the Darwishes relied on the advice of Rosenthal, the Darwishes

5

acted without malice, and the underlying actions did not terminate favorably, but were instead decided on technical grounds. The trial court denied the Darwishes' motion in December 2013.

## DISCUSSION

Appeal lies from the orders denying appellants' motions to strike under the anti-SLAPP statute. (§ 425.16, subd. (i).) The trial court's orders are subject to de novo review. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)

The anti-SLAPP statute allows courts to expeditiously dismiss "'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'" (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 670; § 425.16, subd. (a); *Simpson Strong-Tie, Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) There are two components to a motion to strike brought under section 425.16. First, the defendant must show that the challenged cause of action is one arising from protected activity.[6] (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) Second, if the lawsuit affects constitutional rights, the plaintiff must establish a reasonable probability that he or she will prevail on the merits of the claims. (§ 425.16, subd. (b)(1); *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 (*Zamos*).)

---

[6] Under the statute, an act in furtherance of the right of petition or free speech includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

6

Because Rosenthal and the Darwishes make similar arguments on appeal we address their arguments separately only where noted.

## I.      Protected activity

Respondents concede that appellants met their burden on the first prong of the anti-SLAPP analysis.  The action for malicious prosecution arises from protected activity—the filing and prosecution of the underlying unlawful detainer actions.  (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281; see also *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741; *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1398 (*Sycamore Ridge*).)

## II.     Probability of prevailing

When the first prong on an anti-SLAPP motion is satisfied, the burden shifts to the plaintiff to establish a probability of prevailing.  (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 213.)  The plaintiff must show that the complaint is legally sufficient and is supported by prima facie evidence that, if credited, would be sufficient to sustain a favorable judgment.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 93; *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 738; *Major v. Silna* (2005) 134 Cal.App.4th 1485, 1498.)  The burden on the plaintiff under the second prong is similar to that of a party opposing a motion for summary judgment.  (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 768; *Delois v. Barrett Block Partners* (2009) 177 Cal.App.4th 940, 947.)

In opposing an anti-SLAPP motion, a plaintiff cannot simply rely on the allegations of the complaint; the opposition must be based on evidence that would be admissible at trial.  (*Integrated Healthcare Holdings, Inc. v. Fitzgibbons* (2006) 140 Cal.App.4th 515, 527.)  "In reviewing the plaintiff's evidence, the court does not weigh it; rather, it simply determines whether the plaintiff has made a prima facie showing of facts necessary to establish its claim at trial."  (*Paulus v. Bob Lynch Ford, Inc*, *supra*, 139 Cal.App.4th 659, 673.)  To avoid being stricken as a SLAPP, the plaintiff must establish that his or her claim has at least "minimal merit."  (*Navellier v. Sletten*, *supra*, 29 Cal.4th 82, 88-89.)

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup*, *supra*, 39 Cal.4th 260, 292.) "[C]ontinuing to prosecute a lawsuit discovered to lack probable cause" can support a claim for malicious prosecution. (*Zamos*, *supra*, 32 Cal.4th 958, 973.)

## A. Favorable termination

Appellants contend that the underlying actions did not terminate favorably for respondents. They base their argument on a purported failure by respondents to establish their innocence in the underlying actions. A "'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 751; see also *HMS Capital, Inc. v. Lawyers Title Co.*, *supra*, 118 Cal.App.4th 204, 214 ["resolution of the underlying case must have tended to indicate the malicious prosecution plaintiff's innocence"].)

Appellants further assert that the judgments in favor of Rodriguez and Hart in the underlying actions were based purely on a procedural, technical finding—that the three-day notices to quit were defective. "'The test is whether or not the termination tends to indicate the innocence of the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt.'" (*Eells v. Rosenblum* (1995) 36 Cal.App.4th 1848, 1855.) Examples of technical or procedural reasons for termination include dismissals based on the statute of limitations or laches, or following settlement. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 342.)

Appellants' argument that the judgments in the underlying cases were merely procedural or technical is unconvincing. The trial court in the underlying matters found

8

that the Darwishes failed to prove they were entitled to possession, payment of rent, damages, or any other relief sought. Specifically, in both the notices to quit and the unlawful detainer complaints, the Darwishes sought 10 months of past-due rent. The trial court found that the Darwishes were not entitled to make this claim because, pursuant to Los Angeles Municipal Code section 151.05, they could not demand or accept rent without first serving a copy of a valid registration statement under the LARSO.[7] The Darwishes did not attempt to register the property with the LARSO until March 2012, one month before they served the notices to quit, and they still had not received registration certificates by the time of trial in the underlying matters.

The trial court found that this and other evidence established that appellants had no right to recover 10 months of back-rent in the underlying action.[8] The evidence also compelled a finding that appellants could not properly seek eviction, since a valid three-day notice to quit is a prerequisite to an unlawful detainer action. (*Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 697 (*Bevill*).) "A three-day notice must contain 'the amount which is due.' (Code Civ. Proc., § 1161, subd. 2.) A notice which demands rent in excess of the amount due does not satisfy this requirement. [Citations.] This rule ensures that a landlord will not be entitled to regain possession in an unlawful detainer action unless the tenant has had the opportunity to pay the delinquent rent." (*Bevill*, at p. 697, fn. omitted.)

---

[7] The court also found that, because the Darwishes argued they complied with the LARSO, they were judicially estopped from claiming that the property was not subject to the LARSO.

[8] Appellants contend that the evidence submitted in opposition to the anti-SLAPP motions was not admissible because it was presented through a declaration by respondents' attorney. The evidence, however, consisted mostly of documents that could properly be authenticated by the attorney. In any event, it is appellants' "burden on appeal to affirmatively challenge the trial court's evidentiary ruling, and demonstrate the court's error." (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.) Appellants must "identify the court's evidentiary ruling as a distinct assignment of error" and provide a separate argument heading and analysis of the issue. (*Ibid.*) Appellants failed to sufficiently challenge the trial court's admission of the evidence and thus forfeited any claim of abuse of discretion.

9

Appellants' claims were not dismissed simply because of technical defects in their notices to quit. Instead, after presentation of the evidence at trial, the court found that appellants were not entitled to any relief sought in their unlawful detainer complaints. The court's findings reflected on the merits of the cases and tended to show that Rodriguez and Hart were innocent of the claims asserted by appellants—that they owed 10 months of rent and that they were immediately subject to eviction.

Appellants' decision to dismiss the remaining four unlawful detainer actions also reflected a termination favorable to the remaining respondents. "A voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury. [Citation.] This is because '"[a] dismissal for failure to prosecute . . . does reflect on the merits of the action [and in favor of the defendant] . . . . The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted."'" (*Sycamore Ridge*, *supra*, 157 Cal.App.4th 1385, 1400.) Although a dismissal taken simply to avoid incurring further fees and costs is not necessarily considered a termination favorable to the nondismissing party (*Oprian v. Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337, 344), the evidence presented here was sufficient to show that the remaining actions were dismissed because they were considered likely to fail. According to a declaration signed by Rosenthal, there was a "substantial possibility" the trial court would "render the same decision" that was made with respect to Rodriguez and Hart.

### B. Lack of probable cause

Appellants next argue that the underlying unlawful detainer actions were, at a minimum, tenable, and respondents failed to show the actions lacked probable cause. Where a litigant relies upon facts which he or she has reasonable cause to believe are true, and when the legal theory underlying the cause of action is tenable under the known facts, probable cause is present. (*Soukup*, *supra*, 39 Cal.4th 260, 292.) If "any reasonable attorney" would have considered the claim valid under the circumstances, then no claim for malicious prosecution will lie. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 886 (*Sheldon Appel*); *Sycamore Ridge*, *supra*, 157 Cal.App.4th

10

1385, 1402.) "In determining whether the prior action was legally tenable, i.e., whether the action was supported by probable cause, the court is to construe the allegations of the underlying complaint liberally, in a light most favorable to the malicious prosecution defendant." (*Sycamore Ridge*, at p. 1402.) The determination of whether the institution of the underlying lawsuit was legally tenable is a question of law. (*Sheldon Appel*, at p. 878.)

We find that the evidence presented by respondents on the anti-SLAPP motion, if credited, leads to the conclusion that the underlying unlawful detainer actions were initiated and prosecuted without probable cause. Appellants had knowledge of facts that should have made clear they could not properly support the claims made in the unlawful detainer complaints. A March 2011 letter from LAHD warned the Darwishes that they could not demand or collect rent from the tenants until a registration certificate was issued for the property. Appellants, however, did not attempt to register the property under the LARSO until March 2012, one month before the three-day notices to quit were served. Those notices sought 10 months of back-rent. The ensuing complaints also asserted that respondents owed 10 months of rent.

Appellants contend that they substantially complied with the LARSO, and LAHD's failure to issue a registration certificate should not have prevented them from asserting their rights as landlord. Appellants fail to acknowledge, however, that their attempt to comply with the LARSO came only one month before they demanded the previous 10 months of rent.[9] This demand was clearly improper; it rendered their notices to quit ineffective, and their unlawful detainer actions certain to fail. (*Bevill*, *supra*, 27 Cal.App.4th 694, 697; see also *Nourafchan v. Miner* (1985) 169 Cal.App.3d 746.) A reasonable attorney would not have considered the actions valid under these circumstances.

---

[9]    A request for judicial notice filed by the Darwishes on May 12, 2015, concerning communications with city departments, was granted in part.

11

Other evidence also supports the conclusion that the underlying actions were initiated without probable cause. The trial court found that the Darwishes never demanded rent from respondents before issuing the April 2012 notices to quit. In addition, the Darwishes admitted in discovery that they did not know the terms of any rental agreements with respondents and also admitted that the property was subject to the LARSO. This evidence further supports the conclusion that appellants had no basis to initiate eviction proceedings based on 10 months of "delinquent" rent that was not owed.

Moreover, the evidence shows that appellants refused to dismiss the remaining actions until several months after the trial court issued its statement of decision on the Rodriguez and Hart matters. Certainly after the statement of decision was rendered, appellants should have been aware that the cases lacked merit. Their choice to continue prosecuting the matters provided further basis for a malicious prosecution action. (See *Zamos*, *supra*, 32 Cal.4th 958, 973.)

### C. Attorney advice

The Darwishes assert that they relied on the advice of Rosenthal in bringing and prosecuting the underlying actions, and therefore cannot themselves be liable for malicious prosecution. "Good faith reliance on the advice of counsel, after truthful disclosure of all the relevant facts, is a complete defense to a malicious prosecution claim." (*Bisno v. Douglas Emmett Realty Fund 1988* (2009) 174 Cal.App.4th 1534, 1544.) "However, if the initiator acts in bad faith or withholds from counsel facts he knew or should have known would defeat a cause of action otherwise appearing from the information supplied, that defense fails." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 53-54.)

Respondents could meet their burden of establishing a prima facie case against the Darwishes by submitting evidence tending to show that the Darwishes acted in bad faith in bringing and prosecuting the underlying actions. (See *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 114-115.) We find that respondents met this burden. The Darwishes, who by their own admission were experienced real estate professionals, were directly involved in key aspects of the underlying litigation.

12

The March 2011 LAHD letter to the Darwishes stated that they were required to pay for relocation assistance in the event of eviction, and that they could not demand or accept rent from tenants without first receiving and serving a registration certificate for the property. Despite this warning, the trial court in the underlying actions found no evidence that the Darwishes tendered relocation fees or obtained a registration certificate. David personally served the notices to quit demanding 10 months of rent, despite the fact that the Darwishes attempted to register the property under the LARSO only one month prior. David also verified the unlawful detainer complaints. Moreover, David verified the discovery responses admitting that the property was subject to the LARSO and that the Darwishes did not know the terms of any rental agreements with respondents. Given these facts, a trier of fact could reasonably find that the Darwishes acted in bad faith in bringing and prosecuting the underlying actions, regardless of what advice they were given by counsel.

### D. Malice

Finally, appellants contend that respondents failed to show the underlying actions were initiated with malice. The question of whether or not malice existed depends on a defendant's subjective intent or purpose in initiating the prior action. (*Sheldon Appel*, *supra*, 47 Cal.3d 863, 874.) Malice "is not limited to actual hostility or ill will toward the plaintiff. Rather, malice is present when proceedings are instituted primarily for an improper purpose." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1157.) "Evidence tending to show that the defendants did not subjectively believe that the action was tenable is relevant to whether an action was instituted or maintained with malice." (*Sycamore Ridge*, *supra*,157 Cal.App.4th 1385, 1407.) Furthermore, "[w]hile the mere absence of probable cause, without more, 'is not sufficient to demonstrate malice' [citation], '"[m]alice may also be inferred from the facts establishing lack of probable cause."'" (*Id.* at p. 1409.)

We find that respondents submitted sufficient evidence of malice. The underlying actions were the third round of unlawful detainer actions brought by appellants. They were unsuccessful in the first two actions, and by the time of the third action, they had

13

done little to ameliorate the problems associated with respondents' tenancies. Appellants were aware that eviction would require payment of relocation assistance and the service of a registration certificate. The evidence showed no attempt by the Darwishes to pay the requisite relocation assistance, and they only sought to obtain a registration certificate shortly before bringing the underlying actions. Furthermore, even after they lost at trial in the Rodriguez and Hart matters, appellants continued to litigate their actions against the remaining respondents. From the totality of this evidence, one can infer that appellants did not believe they would actually be successful in the underlying actions, but that they rather intended to force respondents to vacate the property without complying with relocation and registration requirements.

## DISPOSITION

The orders denying the anti-SLAPP motions are affirmed. Respondents shall recover costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

14