Filed 8/9/16  Chang-Mathieu v. Larner CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KIMBERLY CHANG-MATHIEU et al., | B257754 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC122016) |
| v. | |
| JEREMY K. LARNER, | **ORDER MODIFYING OPINION** |
| Defendant and Appellant; | **[CHANGE IN JUDGMENT]** |
| CHRISTOPHER L. RUDD et al., | |
| Defendants and Respondents. | |

THE COURT:[*]

It is ordered that the opinion filed herein on August 2, 2016, be modified as follows:

On page 13, the last sentence of the Disposition, beginning "The Changs are entitled" is deleted and the paragraph now reads:

The order granting the Rudd defendants' anti-SLAPP motion is affirmed.  The order denying Larner's anti-SLAPP motion is affirmed.  The Rudd defendants are entitled to costs and attorney fees from the Changs.

This modification changes the judgment.

---

[*] BOREN, P. J., ASHMANN-GERST, J., HOFFSTADT, J.

Filed 8/2/16  Chang-Mathieu v. Larner CA2/2 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KIMBERLY CHANG-MATHIEU et al., | B257754 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC122016) |
| v. | |
| JEREMY K. LARNER, | |
| Defendant and Appellant; | |
| CHRISTOPHER L. RUDD et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Gerald Rosenberg, Judge.  Affirmed.

Farella Braun + Martel, Neil A. Goteiner, Kelly A. Woodruff, and Anthony P. Schoenberg for Plaintiffs and Appellants.

Law Offices of Ronald Richards & Associates, Ronald N. Richards and Nicholas A. Bravo for Defendant and Appellant.

Reback, McAndrews, Kjar, Warford & Stockalper, James J. Kjar; Nemecek & Cole, Jonathan B. Cole and Cindy A. Shapiro for Defendants and Respondents.

_____

Jeremy K. Larner (Larner), represented by Christopher L. Rudd (Rudd) and C2 Law Group (collectively the Rudd defendants), brought a defamation action against Kimberly Chang-Mathieu (Chang) and Kimberly Chang-Mathieu, Inc. (collectively the Changs). After nearly three months, Larner voluntarily dismissed his complaint. The Changs then initiated the instant malicious prosecution action against Larner and the Rudd defendants. Larner and the Rudd defendants each responded by filing a special motion to strike the Changs' complaint pursuant to Code of Civil Procedure section 425.16,[1] California's anti-SLAPP[2] statute. The trial court granted the Rudd defendants' motion and denied Larner's motion. The Changs appeal the trial court order granting the Rudd defendants' motion, and Larner appeals the trial court order denying his motion.

We affirm both orders.

## FACTUAL AND PROCEDURAL BACKGROUND

*Factual Background*

Larner is a collector of contemporary art; Chang is a professional art advisor.

In 2011 and 2012, Chang assisted Larner in purchasing several pieces of contemporary art, including a painting by the artist Mattias Faldbakken, *Untitled (Garbage Bag #06)* (the Faldbakken piece or the Garbage Bag) that Larner acquired and later sold. At the heart of the dispute between the parties in all of the underlying litigation is Larner's sale of the Faldbakken piece: According to the Changs, Larner breached protocol by reselling the Faldbakken piece at auction shortly after acquiring it. According to Larner, Chang never told him that he was prohibited from selling the art that he acquired. In fact, she actually suggested that he buy a piece of art and "'flip' it."

---

[1]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]     SLAPP is an acronym for strategic lawsuit against public participation. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 813, overruled in part on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 (*Equilon*).)

Larner claims that in May or June 2012, the Changs "unilaterally dropped [him] as a client and . . . embarked on a calculated and open campaign to slander and defame [him] to other art dealers, such that art dealers with whom [he] had established a relationship refused to work with [him]." Larner allegedly learned that Chang told certain "influential people in the art world that [he] was an art flipper, a liar, a piece of shit and that [he] could not be trusted." She also allegedly told these people not to work with him on buying and selling art.

On January 26, 2013, Larner and Chang engaged in a spiteful e-mail exchange. At one point, Chang asked Larner to "STOP" and called him a "LIAR." Later, Chang wrote to Larner (and copied an art gallery on the e-mail): "You are gross. And if I was a man I would fucken break your face. I'm a minute. Every dealer will be cc'd to this e-mail." She followed it up with another e-mail (and again copied an art gallery on the e-mail): "I'm not stopping here!! [¶] I will share this . . . and keep going. You FUCKED with the wrong person. [¶] I have nothing to lose."

Two days later, Chang wrote to Larner, "I slept on it and I will not say anything regarding this incident."

In April 2013, Chang had lunch with Larner. According to Chang, "[a]t that lunch, Larner threatened to sue [her] if [she] did not resume working with him and provide him with access to art galleries. At no point during this conversation did [she] admit to defaming Larner."

*Defamation Action*

On May 31, 2013, the Rudd defendants, on behalf of Larner, filed a complaint alleging defamation and related claims against the Changs. The defamation claim is based upon Chang falsely calling Larner a "'liar.'"

At some point, Rudd spoke with the Changs' attorney about the lawsuit. Opposing counsel exchanged fairly hateful e-mails, during which Rudd referred to "exploring the apology/settlement [he] initially brought up when [the Changs' attorney] called." The Changs' attorney replied, noting that "the option of discussing settlement" was still available.

3

The Changs began Larner's deposition on July 26, 2013. Questions centered around Larner's sale of the Faldbakken piece, and Rudd submitted numerous objections. According to the Changs, "[t]hough the only [allegedly defamatory] statement Larner identified in his complaint is Chang's having called Larner a 'liar' regarding his denial of selling the Garbage Bag, Larner refused to provide any evidence, either documents or testimony, regarding whether or not he was telling the truth when he claimed ignorance of the Garbage Bag's coming auction. Even after the deposition, Larner and Rudd refused to produce documents exchanged with third parties which would have demonstrated Larner's 'flipping' and the truth of Chang's statement, but aggressively continued the litigation." At the conclusion of the deposition, Larner stated: "Look, I don't care what [Chang] sits here and tells you. She has fucked me, and I have proof. Otherwise I wouldn't be wasting my valuable time running my businesses or his time and am going to spend the money I have to . . . prove this because she's fucked me, and it's going to happen in return to her."

The Changs then served a document subpoena on the auction house that auctioned the Garbage Bag, asking for documents showing the identity of the party who sold the piece as well as any documents regarding Larner's consignments with the auction house.

Meanwhile, just days before the auction house was set to comply with the subpoena, defendants served a series of "changes" to Larner's deposition transcript that retracted and/or contradicted nearly all of Larner's crucial testimony. For example, during the deposition, Larner stated that he was unaware that the Garbage Bag was going to auction; his "changes" reflect that he was aware that the Faldbakken piece was going to auction.

The same day that defendants submitted Larner's deposition changes to the Changs, Larner, still represented by the Rudd defendants, voluntarily dismissed his complaint. Larner claims that he "decided to dismiss the defamation claim against [the Changs] due to personal reasons and not because of the merits of the claims against [them], which [he] believe[s] still have merit and are actionable."

4

*Malicious Prosecution Complaint and Anti-SLAPP Motions*

On February 4, 2014, the Changs filed a complaint alleging malicious prosecution against the Rudd defendants and Larner. The Rudd defendants and Larner separately filed anti-SLAPP motions in response.

The Changs opposed both motions.

After entertaining oral argument and taking the matter under submission, the trial court granted the Rudd defendants' anti-SLAPP motion. It determined that the Changs' "only evidence of malice [was] Rudd's purported bad-faith by withholding exonerating documents. However, Rudd's objections to evidence and questioning pertaining to disposition of the Faldbakken piece based on relevance and privacy were not facially improper given the underlying complaint, which did not mention the Faldbakken piece. The court cannot assume that an attorney who objects to discovery is acting in bad faith, and there is no showing that Rudd knew what the documents from the auction house would reveal or of the consignment agreement's existence. [The Changs] fail[ed] to present circumstantial evidence from which the court may conclude Rudd was knowingly and in bad faith obstruct[ing] access to exonerating documents, as opposed to serving as a zealous advocate in good faith on behalf of his client. Moreover, the court may not impute Larner's bad faith or malice to his counsel."

The trial court denied Larner's anti-SLAPP motion, reasoning that the Changs presented "sufficient evidence to establish a probability of prevailing" on their claim, namely that the prior action was terminated in their favor, the actionable statement was true, and Larner's intent in filing the prior action was to extract a settlement and a promise by the Changs to continue working for him.

*Appeals*

The Changs timely filed a notice of appeal from the trial court's order granting the Rudd defendants' anti-SLAPP motion. Larner timely filed a notice of appeal from the trial court's order denying his anti-SLAPP motion.

**DISCUSSION**

I. *Standard of review*

"We review the trial court's rulings on a SLAPP motion independently under a de novo standard of review. [Citation.]" (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929.)

II. *The anti-SLAPP statute*

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute "posits . . . a two-step process for determining whether an action is a SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) First, the defendant bringing the special motion to strike must make a prima facie showing that the anti-SLAPP statute applies to the claims that are the subject of the motion. (*Wilcox v. Superior Court*, *supra*, 27 Cal.App.4th at p. 819.) Once a moving defendant has met its burden, the motion will be granted (and the claims stricken) unless the court determines that the plaintiff has established a probability of prevailing on the claim. (*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568.)

In order to establish a probability of prevailing, a plaintiff must *substantiate* each element of the alleged cause of action through competent, admissible evidence. (*DuPont Merck Pharmaceutical Co. v. Superior Court*, *supra*, 78 Cal.App.4th at p. 568; see also *Navellier v. Sletten*, *supra*, 29 Cal.4th at pp. 88–89 [reiterating that "'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by

6

the plaintiff is credited"'"].)  "This requirement has been interpreted to mean that (1) when the trial court examines the plaintiff's affidavits filed in support of the plaintiff's *second step* burden, the court must consider whether the plaintiff has presented sufficient evidence to establish a prima facie case on his causes of action, and (2) when the trial court considers the defendant's opposing affidavits, the court cannot weigh them against the plaintiff's affidavits, but must only decide whether the defendant's affidavits, as a matter of law, defeat the plaintiff's supporting evidence."  (*Schroeder v. Irvine City Council* (2002) 97 Cal.App.4th 174, 184.)  Only if the plaintiff fails to meet this burden, was the motion properly granted.  (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1188–1189.)

*III.  The trial court properly granted the Rudd defendants' anti-SLAPP motion*

The Changs' malicious prosecution action is subject to the anti-SLAPP statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 741.)  Thus, the burden shifted to them to show, through competent, admissible evidence, a probability of success on the merits of their claim in order to defeat the Rudd defendants' anti-SLAPP motion. (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 (*Wilson*); *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1496–1498.)  Accordingly, the Changs were required to establish that the Rudd defendants' underlying action (1) was commenced by them or at their direction, (2) pursued to a termination in the Changs' favor, (3) brought without probable cause, and (4) initiated with malice.  (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871–872 (*Sheldon Appel*).)  Quite simply, the Changs did not establish that the Rudd defendants acted with malice.

Proof of the element of malice requires a plaintiff to show that the proceeding was commenced primarily for an improper purpose and that his or her interests were the target of the defendant's improper purpose.  (*Camarena v. Sequoia Ins. Co.* (1987) 190 Cal.App.3d 1089, 1097; see also *George F. Hillenbrand, Inc. v. Insurance Co. of North America* (2002) 104 Cal.App.4th 784, 814.)  Malice may be inferred where a party knowingly brings an action without probable cause or continues to prosecute a lawsuit discovered to lack probable cause.  (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 970.)  That

7

being said, the absence of probable cause does not, standing alone, constitute malice. (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 498–499, fn. 29.) "Merely because the prior action lacked legal tenability, as measured objectively (i.e., by the standard of whether any reasonable attorney would have thought the claim tenable [see *Sheldon Appel*, *supra*, 47 Cal.3d [at] pp. 885–886]), *without more*, would not logically or reasonably permit the inference that such lack of probable cause was accompanied by the actor's subjective malicious state of mind. In other words, the presence of malice must be established by other, additional evidence." (*Downey Venture v. LMI Ins. Co.*, *supra*, at p. 498; see also *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 743.)

Here there is no evidence that the Rudd defendants acted with malice.

In urging us to reverse, the Changs argue that the Rudd defendants initiated the defamation action knowing it was meritless, which is evidence of malice. After all, according to the Changs, the Rudd defendants knew that Larner had flipped art in the past; thus, Chang's statement that Larner was an "art flipper" was true and therefore not actionable. The problem for the Changs is that the defamation complaint is not solely based upon the allegedly false accusation that Larner was an art flipper. The complaint alleges that Chang "made a series of . . . unprivileged, written and oral communications to third parties concerning [Larner], using foul language and false and defamatory descriptions of [Larner] . . . such as calling him a 'liar.'" And, as evidenced by Rudd's declaration filed in support of his anti-SLAPP motion, those allegations were supported by facts relayed to Rudd. This evidence establishes that the defamation action was not filed by the Rudd defendants with knowledge that it lacked merit.

Alternatively, the Changs argue that the Rudd defendants acted with malice because Rudd failed to conduct even a cursory investigation into the merits of the claims. Rudd's declarations show otherwise. Rudd declared that before filing the complaint, he had seen the nasty January 26, 2013, e-mail exchange between Chang and Larner, and independent witnesses corroborated Larner's story. This evidence confirms a basic investigation to support the Rudd defendants' steps in filing what they believed was a well-founded action.

8

Moreover, the Changs assert that Rudd only initiated the underlying action to extract a settlement. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218 [malice "can exist . . . where the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim"].) While there may be evidence that that was Larner's intention, there is no evidence to support the Changs' supposition that the Rudd defendants knew of "Larner's improper purpose and assisted him with it." Rudd's mention of an "apology/settlement" during an initial telephone call (and followed up in an e-mail) is a far cry from the "thinly veiled threats of ongoing litigation" in *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1544, and the evidence in *HMS Capital, Inc. v. Lawyers Title Co.*, *supra*, 118 Cal.App.4th at page 218 showing that the defendant "was simply trying to squeeze a settlement" from the plaintiff.

The Changs further contend that Rudd concealed exonerating evidence, thereby creating the reasonable inference that he knew that the underlying case lacked merit. We disagree. While the Changs characterize the Rudd defendants' conduct as "obstruct[ion]," we agree with the trial court's determination that their actions and objections demonstrate that they were simply acting as zealous advocates for their client.

Finally, the Changs claim that the Rudd defendants' malice is evinced by Rudd's continued prosecution of the defamation action even after increased evidence proved that it was meritless. The record shows otherwise. As soon as the Rudd defendants learned of the numerous "changes" to Larner's deposition testimony, they promptly dismissed the complaint against the Changs.

*IV. The trial court properly denied Larner's anti-SLAPP motion*

As set forth above, the Changs' malicious prosecution action against Larner is subject to the anti-SLAPP statute. (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at p. 741.) Thus, we turn to the question of whether the Changs demonstrated a probability of prevailing on their claim against Larner. We conclude that they met their burden.

A. <u>Commenced by Larner</u>

There is no dispute that Larner initiated the defamation action against the Changs.

B.  Favorable termination

In urging us to reverse, Larner asserts that the Changs cannot prevail because they did not show a favorable termination of the defamation action.

A malicious prosecution claim does not accrue until the underlying action is terminated in the malicious prosecution plaintiff's favor.  (*Ray v. First Federal Bank* (1998) 61 Cal.App.4th 315, 318.)  ""'"Favorable" termination does not occur merely because a party complained against has prevailed in an underlying action.'  [Citation.] Rather, the termination must reflect on the malicious prosecution plaintiff's innocence of the misconduct charged, as opposed to occurring merely for technical or procedural reasons.  [Citation.]"  (*Ibid.*; see also *Pender v. Radin* (1994) 23 Cal.App.4th 1807, 1813– 1814; *Robbins v. Blecher* (1997) 52 Cal.App.4th 886, 893 [dismissal must be evaluated to determine if it was on the merits]; *Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1147, 1149.)  "If the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution.  [Citation.]"  (*Pattiz v. Minye* (1998) 61 Cal.App.4th 822, 827; see also *Wilshire-Doheny Associates, Ltd. v. Shapiro* (2000) 83 Cal.App.4th 1380, 1391; *Mattel, Inc. v. Luce, Forward, Hamilton & Scripps*, *supra*, 99 Cal.App.4th at pp. 1190–1191; *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1056 ["the termination must reflect on the merits of the action and the Plaintiffs' innocence of the misconduct alleged in the lawsuit"].)  A voluntary dismissal for economic reasons, not related to the merits of the case, does not constitute a favorable termination.  (*Oprian v. Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337, 343–345; see also *Contemporary Services Corp. v. Staff Pro Inc.*, *supra*, 152 Cal.App.4th at pp. 1057–1058.)

Here, there is ample evidence to support the trial court's implicit determination that the defamation action was dismissed for reasons relating to the merits of the case. After all, Larner filed his voluntary dismissal the same day he submitted his numerous substantive changes to his deposition testimony.

Larner asserts that he voluntarily dismissed his action "due to personal reasons and not because of the merits of the claims against her." In essence, he did not want to incur the expense and stress of prolonged litigation. Larner's self-serving declaration does not defeat the more than reasonable inference raised by the timing of the submission of Larner's changes to his deposition testimony and the filing of the voluntary dismissal. (*Jay v. Mahaffey*, *supra*, 218 Cal.App.4th at p. 1540.)

C. <u>Probable cause</u>

To succeed on an action for malicious prosecution, a plaintiff need only show that a single cause of action was without probable cause, even if it is combined with other viable causes of action. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 676.)

The issue of whether probable cause exists is a question of law. (*Sheldon Appel*, *supra*, 47 Cal.3d at p. 884.) Larner's defamation complaint lacked probable cause only if all reasonable lawyers would agree that it totally and completely lacked merit. (*Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 382.)

An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted. The court must "determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Sheldon Appel*, *supra,* 47 Cal.3d at p. 878.) The test the court is to apply is whether "any reasonable attorney would have thought the claim tenable . . . ." (*Id*. at p. 886.) "In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought. A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164–165.)

11

The determination as to whether there was probable cause to initiate an action "depends on the facts known to the litigant . . . at the time the action is brought. [Citation.]" (*Wilson*, *supra*, 28 Cal.4th at p. 822, fn. 6.)

Based upon what Larner knew at the time he filed his complaint against the Changs, it is evident that he lacked probable cause to pursue his claim for defamation. He based this cause of action upon Chang calling him an "art flipper"[3] and a "liar." But, as the trial court found, the Changs presented a prima facie case demonstrating that those two statements were true. For example, Larner represented in the January 26, 2013, e-mail exchange that he still had the Faldbakken piece "and [was not] planning on getting rid of it"; however, he had already consigned that piece for sale to an auction house. This evidence alone supports the Changs' prima facie case.

D. Malice

Finally, pursuant to the legal principles set forth above, the Changs also demonstrated a prima facie case of malice. Larner's ill-will was evinced at his deposition. Additionally, ample evidence supports the Changs' theory that Larner filed suit against them to extract a settlement and/or a promise by them to continue working with him. Specifically, Chang presented evidence that in April 2013, she had lunch with Larner; at that lunch, "Larner threatened to sue [her] if [she] did not resume working with him and provide him with access to art galleries." While Larner paints a different picture, we cannot weigh the evidence, and we must accept as true the evidence favorable to the Changs. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.)

---

[3] There appears to be some dispute on appeal as to what the phrase "art flipper" means. But no one defines it and no one directs us to an appropriate definition of that phrase. Larner claims that he did not "flip" the piece because he did not sell it to reap a profit. But he does not offer us any legal or evidentiary authority to support his proposition that in order for the sale of a piece of art to constitute a "flip," the seller must garner a profit.

12

## DISPOSITION

The order granting the Rudd defendants' anti-SLAPP motion is affirmed. The order denying Larner's anti-SLAPP motion is affirmed. The Rudd defendants are entitled to costs and attorney fees from the Changs. The Changs are entitled to costs and attorney fees from Larner.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
         ASHMANN-GERST


We concur:


_____, P. J.
      BOREN


_____, J.
      HOFFSTADT


13