Filed 10/25/22 Estate of Falkenborg CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ESTATE OF MARIE FALKENBORG, Deceased | B305925 |
| LYNN FALKENBORG WINTERROWD, Executor, Plaintiff and Appellant, v. DONALD DALE FALKENBORG, Defendant and Respondent. | (Los Angeles County Super. Ct. No. 17STPB08636) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deborah L. Christian, Judge. Reversed and remanded with directions.

Shaw Koepke & Satter and Jens B. Koepke for Plaintiff and Appellant.

Snow Law Corp. and Stephen L. Snow for Defendant and Respondent.

Lynn Falkenborg Winterrowd (Lynn), the executor of her mother's will, petitioned to recover litigation costs that the estate incurred when defending against her brother Donald Falkenborg's (Donald's) objections to her appointment, first as special administrator of the estate and then as executor of the estate. In that same petition, Lynn also sought to recover compensatory and punitive damages for the estate from Donald for malicious prosecution of the objection to her appointment as executor. The probate court granted judgment on the pleadings for Donald. We are asked to decide whether Lynn had standing to petition for recovery of costs (even though letters testamentary had not issued when the petition was filed) and whether she alleged facts sufficient to assert a claim for malicious prosecution.

## I. BACKGROUND

In 1992, Lynn and Donald's parents, Marie (Marie) and Donald (Donald, Sr.) Falkenborg, created a family trust and named themselves trustees; Lynn was named as a successor trustee.[1] The most significant asset in the trust was Marie and Donald, Sr.'s interest in a business they began and built, Borg Equipment & Supply, Inc. Under the terms of the trust, Marie and Donald, Sr.'s children would receive equal shares of the trust estate following their parents' deaths.

Donald, Sr. died in 2004 and Marie died in 2017. Prior to Donald, Sr.'s death, Marie executed a pour-over will which left all her property to the trust. In her will, Marie named Lynn as "first

---

[1] Lynn was named as co-successor trustee with her brother William, who died in 2016. The trust did not name Donald as a successor trustee or as an alternate successor trustee.

2

alternative Executor" in the event Donald, Sr. predeceased her.[2] The will contains a "no contest" provision that provides anyone who, either "directly or indirectly," contests the probate of the will would receive one dollar rather than his or her otherwise bequeathed share or interest in her estate. Marie also appointed Lynn as her health care agent with durable power of attorney for health care decisions.

### A. Donald's Objections to Lynn's Appointment as Special Administrator and Executor

Following Marie's death, Lynn petitioned for probate of her mother's will and, at the same time, sought via ex parte application an expedited hearing to obtain temporary letters of special administration with general powers to defend the estate from claims brought by the wife of one of Lynn and Donald's deceased brothers who maintained she was entitled to a controlling interest in the family business.[3] Lynn's petition for probate did not advance any reasons for why she should be appointed executor beyond the designation in Marie's will.

Although Donald consented to Lynn's appointment as a special administrator with limited authority to represent the estate against the claims of their former sister-in-law, he objected to Lynn's request to be granted general powers over the estate.

---

[2]     In the event Lynn predeceased Marie, the will named Lynn's brother William as a "second alternative Executor." The will did not name Donald as a third alternative executor.

[3]     Several months after her appointment as executor became effective, Lynn settled the dispute with her former sister-in-law for $465,000.

In Donald's view, there were no exigent circumstances requiring the issuance of general powers at an early stage of the probate proceedings. In addition, on information and belief, Donald alleged that prior to their mother Marie's death, and while she was suffering from dementia, Lynn had engaged in various forms of "substantial misconduct" and may have exercised undue influence over Marie.[4] Donald requested Lynn's authority as special administrator be "strictly limited" to defending the claims brought by their former sister-in-law.

Lynn responded to Donald's objections. She argued her power as special administrator should not be limited to defending against the claims of her former sister-in-law; rather, she should be granted the authority to commence, maintain, or defend against any lawsuit or other legal proceeding.

The probate court granted Lynn's ex parte application for an expedited hearing on her petition to be named special administrator. At the hearing, the court implicitly overruled Donald's objections by appointing Lynn as the estate's temporary special administrator with "full authority" under the Independent

---

[4]     Among other things, Donald alleged Lynn manipulated Marie into naming Lynn president of the family business, attempted to manipulate Marie into giving Lynn valuable assets belonging to the family business, tried to manipulate the testamentary distribution of Marie's assets, and used Marie's money to pay some of Lynn's personal expenses. Donald also alleged Lynn's "deep hostility" toward him and the estate's other beneficiaries would prevent the proper administration of the estate.

4

Administration of Estates Act (Prob. Code,[5] § 10400 et seq.) to both commence and defend actions for the benefit of the estate, including but not limited to the claims brought by the former sister-in-law. The court, however, did "not grant any authority to marshal assets without further Court approval." Lynn's tenure as special administrator was set to expire on March 19, 2018.

In addition to contesting the scope of Lynn's appointment as special administrator of the estate, Donald also opposed—at least initially—Lynn's petition for probate requesting the court appoint her executor of the estate. Among other things, Donald argued Lynn exercised undue influence over their mother and succeeded in getting Marie to amend the revocable portion of the family trust so as to give all of the assets in that portion to Lynn.[6] Donald maintained Lynn "aggressively" prevented him from learning about her financial dealings with Marie and alleged, once more, Lynn possessed a "deep hostility" toward him and the other beneficiaries. In addition, Donald averred Lynn "may have physically abused" Marie and, through neglect, may have contributed to Marie's death. Donald advised the probate court he intended to file a competing petition (though he never ultimately did) that would request the court appoint him or a neutral third party to administer the estate.

In response, Lynn served Donald with written discovery requests seeking the factual basis for his objection to her

---

[5] Undesignated statutory references that follow are to the Probate Code.

[6] Donald conceded Lynn's alleged misconduct with regard to the family trust, which purportedly occurred in 2016, did "not affect the validity of [Marie's] will (which was executed in 2002)."

appointment as executor. Donald objected to the discovery requests, asserted various privileges, and refused to provide any documents or identify any facts supporting his objections to her appointment. Lynn then moved to compel further responses. At that point, before the discovery dispute was heard and decided, Donald withdrew his opposition to Lynn's appointment. In the papers withdrawing his opposition, Donald did not explain why he was withdrawing his opposition.

On March 19, 2018, six days after Donald withdrew his opposition to Lynn's appointment and on the day Lynn's powers as special administrator were set to expire, the probate court granted the petition to probate Marie's will and issued an order appointing Lynn as executor of Marie's estate with full authority. The Judicial Council form order appointing Lynn as executor warned in capital letters and bold font that Lynn's appointment was "not effective" until letters testamentary had been issued. Lynn, however, did not obtain letters testamentary until April 2019—more than a year after her appointment as executor.

B.  *Lynn's Petition for Costs and the Malicious Prosecution Claim*

A month after being appointed executor, Lynn, expressly proceeding both as Marie's daughter and the executor of her will, petitioned the probate court for an order compelling Donald to pay legal fees and costs the estate incurred in defending against his objections to Lynn's appointment as special administrator and as executor.[7] Lynn contended that Donald's objections were a

---

[7]     The petition was brought pursuant to section 1002, which provides a court with the discretion to order costs to be paid by a

6

direct contest to a protected instrument and lacked supporting evidence or probable cause. She maintained it would be "unjust" if all of the estate's distributees had to pay for the expense of defending against Donald's objections.

In November 2018, still five months before she obtained letters testamentary, Lynn filed an amended petition. As with her original petition, Lynn indicated she was proceeding in her capacity as both daughter and executor and she sought to recover the costs spent by the estate in defending against Donald's objections to her appointments as special administrator and executor. The amended petition added a claim for malicious prosecution, seeking both compensatory and punitive damages for Donald's objection to Lynn's appointment as executor.[8]

In support of the malicious prosecution claim, Lynn alleged Donald's objection to her appointment as executor was resolved in her favor when Donald voluntarily withdrew the objection. Lynn further alleged Donald lacked probable cause for his objection to her appointment and, in that vein, highlighted (a) that she, not Donald, was named as executor, successor trustee, and health care agent for Marie and (b) that Donald's responses

_____

party to probate proceedings as justice may require. (See generally *Estate of Denman* (1979) 94 Cal.App.3d 289, 291-292 [probate court has discretion to determine whether claimant or estate will bear expense of a will contest].)

[8]     The amended petition also included a claim for intentional interference with prospective economic relations, which was pled as an alternative to the malicious prosecution claim. The intentional interference claim was resolved in Donald's favor and Lynn does not challenge that ruling on appeal. We accordingly do not discuss it further.

to her discovery requests were devoid of facts.[9]  In attempting to allege the element of malice that must be shown to prove a malicious prosecution claim, Lynn averred Donald's lack of probable cause, when joined with unsupported allegations that Lynn physically abused Marie and indirectly caused her death, sufficed to show malice.

In a supplement to the amended petition, Lynn estimated Donald's objections had required the estate to pay $116,200 in attorney fees and $7,800 in costs.

### C.    *Donald's Motion for Judgment on the Pleadings*
Donald moved for judgment on the pleadings.[10]  He argued Lynn lacked standing as executor to bring the amended petition because her appointment was not yet effective when the amended petition was filed (no letters testamentary had issued by that time).  Donald also argued Lynn lacked standing to sue in her individual capacity as Marie's daughter because she could not act for the benefit of the estate as an individual.  Donald further argued the malicious prosecution claim against him was legally

---

[9]    Lynn also alleged that, prior to Marie's death, Donald actively worked against Marie's wishes and interests by, among other things, seeking to be named as her conservator and broadcasting "untruths" about Marie and her personal affairs in his conservatorship petition.

[10]    Initially, Donald moved to strike the amended petition. The probate court denied that motion because it was "untimely" and "fail[ed] to demonstrate the falsity of the amended pleading." Following the denial of his motion to strike, Donald responded to the amended petition by denying the allegations and asserting various affirmative defenses.

8

infirm because Lynn was "not a 'defendant' in the probate litigation" and "was not sued in her personal capacity."

Lynn opposed the motion for judgment on the pleadings. Under the broad definition of "interested person" found in section 48,[11] Lynn argued she had standing, both as Marie's executor and as her daughter, to seek reimbursement of litigation costs incurred defending against Donald's objections.[12]  As for the particulars of the malicious prosecution claim, Lynn maintained it stated a proper cause of action because Donald's failed objection to her appointment as executor constituted a "prior action" which was terminated in her favor.

Donald's motion for judgment on the pleadings was initially heard by a commissioner that was temporarily assigned to hear the matter while the trial judge was absent.  The commissioner found the issues presented by the motion were "a little more complex" than represented in the parties' moving and opposing papers and wondered whether Lynn's malicious prosecution claim was "tenable" when Donald had only objected to Lynn's appointment and did not seek any affirmative relief.  The parties

---

[11]    Section 48 defines an "interested person" to include any of the following:  "(1) An heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding.  [¶]  (2) Any person having priority for appointment as personal representative.  [¶]  (3) A fiduciary representing an interested person."  (§ 48, subd. (a).)

[12]    Lynn alternatively argued the probate court should disregard her delay in securing letters testamentary pursuant to section 475 of the Code of Civil Procedure, which requires courts to disregard errors that do not affect parties' substantive rights.

agreed to submit supplemental briefing addressing the issues raised by the commissioner.

Donald's supplemental brief argued his objection to Lynn's appointment was not a "prior action" as required to make out a malicious prosecution claim. Donald asserted his objection was "defensive" in nature because he merely exercised his legal right, as an interested party, to question Lynn's request for appointment and called on her to prove to the satisfaction of the probate court she had not disqualified herself for appointment. Donald further emphasized he had sought no affirmative relief for his own benefit and did not act "offensively," for instance, by filing a competing petition for appointment or a separate action contesting the validity of Marie's will. Lynn argued Donald's objection, no matter whether it was properly characterized as offensive or defensive, interjected new factual and legal issues into the probate process and, in so doing, created an adversarial action that was resolved in her favor—which, in her view, meant Donald's objection to Lynn's request for appointment as executor was a "prior action."

At the hearing on the motion for judgment on the pleadings, with the assigned trial judge again presiding, the court entertained oral argument and took the matter under submission. Later (after Lynn's appointment as executor had become effective), the court issued an order granting the motion for judgment on the pleadings on several independently sufficient grounds and vacating Lynn's amended petition.

The probate court found Lynn did not have standing to file the amended petition because no letters testamentary had issued at the time of the filing, which the court saw as a jurisdictional defect that was "not cured by [her] subsequent effective

appointment." (The probate court did not discuss whether Lynn had standing to seek reimbursement of litigation costs in any capacity other than as executor.) With regard specifically to the malicious prosecution claim, the court found it defective. The court reasoned Donald's objection to Lynn's appointment as executor was not a "prior action" that could support malicious prosecution liability. The court further found, in any event, that Lynn did not sufficiently allege Donald's objection was raised without probable cause and with malice. In the probate court's view, a contrary finding that a malicious prosecution claim would lie on the facts before it "would encourage every probate appointment that meets with resistance to litigate new petitions for malicious prosecution," which was "not appropriate in probate and family matters."

## II. DISCUSSION

"'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint . . . , supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff . . . has stated a cause of action. [Citation.] Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' [Citation.]" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166, first, second, and fourth alterations added; see also *People for Ethical Operation of Prosecutors etc. v. Spitzer* (2020) 53 Cal.App.5th 391, 409 [rulings predicated on standing to sue are also reviewed de novo].)

Donald was not entitled to judgment on the pleadings as to the entirety of Lynn's amended petition because Lynn has

standing to seek reimbursement of costs as an "interested person" under the Probate Code. But Donald is right that her malicious prosecution claim is not viable because Donald's objection to Lynn's appointment as executor does not qualify as a prior "action" that can support malicious prosecution liability. Indeed, as the probate court observed, permitting malicious prosecution claims to proceed in scenarios like these (as opposed to a full-blown will contest that functions much like a civil cross-complaint) would produce an untoward result: opening all manner of ordinary probate litigation to claims for compensatory and punitive damages, and making an often contentious area of the law even worse on that score.

      *A.    Lynn Alleged Sufficient Facts to Establish Her Standing as Marie's Daughter and Prospective Personal Representative*

The Probate Code allows an executor to "commence and maintain actions and proceedings for the benefit of the estate." (§ 9820, subd (a).) However, "[a] person has no power to administer the estate until the person is appointed personal representative and the appointment becomes effective. Appointment of a personal representative becomes effective when the person appointed is issued letters [testamentary]." (§ 8400, subd. (a).)

Although the probate court appointed Lynn as executor of Marie's estate, her appointment was not effective at the time she filed the amended petition because she had not yet obtained the letters testamentary effectuating her appointment. Consequently, the question before us is whether the amended petition alleges facts that, taken as true, suffice to demonstrate

12

Lynn had standing to file the amended petition on some basis other than as executor.

Standing under the Probate Code depends on whether the petitioning party is an "interested person." (§§ 850, subd. (a)(2)(C) [allowing an "interested person" to file a petition requesting the probate court to make an order where, among other, things, "the decedent died in possession of, or holding title to, real or personal property, and the property or some interest therein is claimed to belong to another"], 8500, subd. (a) ["Any interested person may petition for removal of the personal representative from office"] & 9613, subd. (a) [allowing "any interested person" to petition the probate court to "direct the personal representative to act or not to act concerning the estate"].) The intent of the "interested person" requirement is to "prevent[ ] persons with no interest from delaying the settlement of estate affairs." (*Estate of Maniscalco* (1992) 9 Cal.App.4th 520, 523 (*Maniscalco*).)

To review, section 48 defines "interested person" to include "[a]ny person having priority for appointment as personal representative," as well as a "devisee, child, . . . beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." (§ 48, subds. (a)(1) & (2); see also §§ 24, subd. (c) [defining "beneficiary" as it relates to a trust as "a person who has any present or future interest, vested or contingent"], 26 [defining "child" as "any individual entitled to take as a child under this code by intestate succession from the parent whose relationship is involved"], 34, subd. (a) [defining "devisee" as "any person designated in a will to receive a devise"] & 58, subd. (a) [defining "personal representative" as, among other things, a

13

will's executor].)  Section 48 also provides "[t]he meaning of 'interested person' as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding." (§ 48, subd. (b).)  Subdivision (b) of section 48, in other words, "allows the court to determine the sufficiency of that party's interest for the purpose of each proceeding conducted.  Thus, a party may qualify as an interested person entitled to participate for purposes of one proceeding but not for another.  [Citation.]" (*Estate of Prindle* (2009) 173 Cal.App.4th 119, 126 (*Prindle*).)

Courts have construed the "interested person" requirement broadly.  (See, e.g., *Prindle, supra*, 173 Cal.App.4th at 126-127 [insurer had standing as interested person]; *Maniscalco, supra*, 9 Cal.App.4th at 524-525; *Estate of Davis* (1990) 219 Cal.App.3d 663, 668-669 [probate administrator's surety qualified as interested person].)  Here, however, there is no need for broad construction: Lynn easily qualifies as an interested person under the statute's express terms.  The amended petition (considered with its supporting exhibits) alleges Lynn is Marie's daughter, a devisee under her will, and a beneficiary under the family trust, of which she was the successor trustee.  (§ 48, subd. (a)(1).)  Moreover, as the only living person named in Marie's will as a possible executor, Lynn had priority to be appointed as the estate's personal representative (§ 48, subd. (a)(2)), a fact that the probate court formally recognized when it appointed her executor.  As Marie's daughter, heir, and beneficiary, as well as a prospective personal representative, Lynn had an interest in seeing the estate's assets were not diminished by unmeritorious litigation.  That means she had standing to seek, on behalf of the

14

estate, compensation under section 1002 for the cost of defending against Donald's objections.

Donald's only real counterargument is the contention that Lynn is foreclosed from relying on her individual status as an interested person to challenge the probate court's ruling because the form notice of appeal she filed to contest that ruling indicates she appealed the judgment in her capacity as executor only. The law, however, requires us to "liberally" construe notices of appeal (Cal. Rules of Court, rule 8.100(a)(2); *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 (*K.J.*)), and the omission of an appealing party from a notice of appeal is not dispositive (*K.J.*, *supra*, at 878, 889-890, [construing notice of appeal to include attorney where indicia besides the notice indicated attorney was the party seeking review].)

So construing Lynn's notice of appeal, the notice is consistent with her claim (reflected in the content of her opening brief and her earlier motion to augment the record) to have appealed in both capacities, i.e., as executor and as an interested individual (Marie's daughter). The judgment, prepared by Donald's counsel, stated the probate court found against Lynn, "individually and as Executrix" of Marie's estate, and Lynn took an appeal from that judgment without qualification. To be sure, in the portion of the form notice that calls for inserting the name of the appealing party, counsel inserted "Lynn F. Win[t]errowd, Executrix of the Estate of Marie Falkenborg," but we do not read the specification of her status as executor to exclude her prerogative to challenge the judgment on the individual grounds on which it was also expressly entered—the two are not inconsistent.

15

**B.** *Lynn Has Not Alleged Facts Sufficient to Maintain a Malicious Prosecution Claim Because Donald's Objection to Her Appointment Does Not Qualify as Prosecution of an Action*

The tort of malicious prosecution protects a person's "'interest in freedom from unjustifiable and unreasonable litigation' [citation] . . . ." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 882 (*Sheldon Appel*), italics omitted.) "The tort [of malicious prosecution] consists of three elements. The underlying action must have been: (i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice. [Citations.]" (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775–776 & fn. 1; accord, *LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1054-1055.) Because malicious prosecution actions have "the potential to impose an undue 'chilling effect' on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court, . . . the tort has traditionally been regarded as a disfavored cause of action" and "the elements of the tort have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel, supra*, at 872.)

Relying principally on what she forthrightly acknowledges is dicta in our Supreme Court's decision in *Crowley v. Katleman* (1994) 8 Cal.4th 666, 676-679 (*Crowley*), Lynn argues Donald's objection to her appointment is tantamount to a will contest and is therefore an appropriate predicate for a malicious prosecution

claim. We believe that stretches the *Crowley* dicta beyond its narrow confines and would sweep up a large swath of ordinary, non-affirmative litigation in the probate courts.

*Crowley* concerned a will contest brought by a defendant after the plaintiff petitioned to probate the will of the defendant's deceased husband. (*Crowley*, *supra*, 8 Cal.4th at 673.) The issue decided in that case concerned whether the will contest was brought without probable cause. (*Id*. at 676.) In the course of resolving that issue, the *Crowley* court also addressed several arguments the defendants raised for departing from prior precedent, including an objection that the tort of malicious prosecution is a "'particularly inappropriate'" remedy for will contests because "such a contest does not seek affirmative relief from the proponent of the will—e.g., money damages—but simply seeks to prevent the will from being admitted to probate." (*Id*. at 691.) The plaintiff "dispute[d] this characterization of a will contest, stressing that the pleading that initiates it, however denominated, is in the form of a civil complaint, that a summons issues on that complaint, directing the proponent of the will to file a responsive pleading [citation], and that the latter may then answer or demur [citation]." (*Ibid*.)

Our Supreme Court rejected the defense argument and observed that a will contest involves "two separate and distinct proceedings," namely, a petition for probate of the will and the contest of the probate of the will. (*Id*. at 691-692.) The Court then remarked, in language that Lynn seizes on here, that "whether or not an abusive will contest is technically a separate and distinct action for some purposes, its effect is nevertheless to infringe on the interest of the will's proponent in freedom from unjustifiable and unreasonable litigation. For purposes of the

17

law of malicious prosecution, therefore, the contest satisfies the requirement of a 'prior action . . . commenced by or at the direction of the defendant . . . .' [Citation]." (*Id.* at 692.)

The *Crowley* dicta does not support the availability of a malicious prosecution remedy in this scenario, where there is only an objection to a request for appointment, not a full-blown will contest that functions much like a civil cross-complaint. Instead, the objection at issue here is far more limited and a rather ordinary instance of resistance that is contemplated by an adversarial legal system. As such, it cannot support malicious prosecution liability. (See, e.g., *Merlet v. Rizzo* (1998) 64 Cal.App.4th 53, 59 [distinguishing *Crowley* and explaining courts have held "purely defensive actions cannot be the basis for malicious prosecution claims"].) The probate court will therefore be required, in light of our resolution of the standing issue, to consider on the merits the issue of whether Donald should reimburse the estate for costs under section 1002, but the type of transient opposition found in Donald's objection to Lynn's appointment as executor is not prosecution of an action that can or should give rise to tort liability for compensatory and punitive damages.[13] (See *Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 528 ["The reason the courts have held that a malicious

---

[13] Because we hold Donald's objection to Lynn's appointment is not an action that can support malicious prosecution liability, we have no need to discuss the probate court's alternative rulings that Lynn insufficiently alleged the lack of probable cause and malice elements of a malicious prosecution claim. And we need not discuss whether any defect in the malicious prosecution claim could be cured by amendment because Lynn has not argued the point.

18

prosecution action cannot be grounded upon actions taken within pending litigation is that permitting such a cause of action would disrupt the ongoing lawsuit by injecting tort claims against the parties' lawyers and because the appropriate remedy for actions taken within a lawsuit lies in the invocation of the court's broad powers to control judicial proceedings"].)

DISPOSITION

The judgment is reversed.  The cause is remanded for entry of an order granting judgment on the pleadings solely as to Lynn's claim for malicious prosecution, and for further proceedings not inconsistent with this opinion.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:


RUBIN, P. J.


KIM, J.